# Exhibit F



# Investor Bulletin:
## Reverse Mergers

## Introduction

Many private companies, including some whose operations are located in foreign countries, seek to access the U.S. capital markets by merging with existing public companies. These transactions are commonly referred to as "reverse mergers" or "reverse takeovers (RTOs)."

## What is a Reverse Merger?

In a reverse merger transaction, an existing public "shell company," which is a public reporting company with few or no operations,[1] acquires a private operating company—usually one that is seeking access to funding in the U.S. capital markets. Typically, the shareholders of the private operating company exchange their shares for a large majority of the shares of the public company. Although the public shell company survives the merger, the private operating company's shareholders gain a controlling interest in the voting power and outstanding shares of stock of the public shell company. Also typically, the private operating company's management takes over the board of directors and management of the public shell company. The assets and business operations of the post-

[1] See Securities Act Release No. 8587 (July 15, 2005) [70 FR 42234, 42235 (July 21, 2005)].

merger surviving public company are primarily, if not solely, those of the former private operating company.

## Why Pursue a Reverse Merger?

A private operating company may pursue a reverse merger in order to facilitate its access to the capital markets, including the liquidity that comes with having its stock quoted on a market or listed on an exchange. Private operating companies generally have access only to private forms of equity, while public companies potentially have access to funding from a broader pool of public investors. A reverse merger often is perceived to be a quicker and cheaper method of "going public" than an initial public offering (IPO). The legal and accounting fees associated with a reverse merger tend to be lower than for an IPO. And while the public shell company is required to report the reverse merger in a Form 8-K filing with the SEC, there are no registration requirements under the Securities Act of 1933 as there would be for an IPO. In addition, being public may give a company increased value in the eyes of potential acquirers.

## Trading Reverse Merger Company Stock

Shares of reverse merger companies may be traded in exchange markets or over-the-counter (OTC), as described on page 2.

## Exchange Markets

If the reverse merger company securities are listed and traded on an exchange, the listed company must meet the exchange's initial listing standards to be eligible for listing. The listed company must also satisfy the exchange's maintenance or continued listing standards to remain listed and must comply with the exchange's rules, the federal securities laws, and other applicable provisions of the law.

When certain market or company events occur, an exchange may halt trading in the securities of a listed company. Also, if a listed company fails to meet the exchange's continued listing standards, the exchange may initiate proceedings to delist that company's securities from its marketplace. There is no assurance that a security listed on an exchange will remain so and trade on that exchange indefinitely.[2]

In addition to enforcing listing and maintenance standards for companies trading on their market, the exchanges must have rules to oversee and monitor the trading of those securities. The exchanges also have rules in place to discipline those brokers and dealers who are exchange members.

## Over-the-Counter

The OTC market operates on a decentralized, inter-dealer basis and does not require a direct relationship with the companies whose shares are traded. Generally, in order for a company's stock to trade in the OTC market, a market maker (a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price) must first file a Form 211 with the Financial Industry Regulatory

---

2 Delisted stocks may still trade in the OTC market, however, if certain statutory and regulatory conditions are met.
3 For example, a company whose securities are traded OTC generally does not have a direct relationship with the market maker that files the Form 211 with FINRA, with other market makers that trade the securities, or with FINRA itself, which oversees the OTC market and market participants.

Authority (FINRA) and demonstrate that the company meets the requirements of Rule 15c2-11 under the Securities Exchange Act of 1934 (Exchange Act) as well as FINRA's rules.[3]

However, if a company being acquired in a reverse merger was continuously quoted OTC before the takeover, the post-merger company may be able to rely on that status to permit its shares to continue to be quoted without going through the Form 211 review process. Unless a company that is quoted OTC is reporting under the Exchange Act, which is not always required in the OTC market, investors may find it difficult to discern whether a particular company is a reverse merger entity. Investors may also have trouble obtaining information about the management, operations, financials, and other important aspects of a company.

## Some Risks of Investing in Reverse Merger Companies

As with any investment, investors should proceed with caution when considering whether to invest in reverse merger companies. Many companies either fail or struggle to remain viable following a reverse merger. Also, as with other kinds of investments, there have been instances of fraud and other abuses involving reverse merger companies. In light of these considerations, individual investors should take into account their own financial situation, consult their financial adviser, and perform thorough research before making any investment decisions concerning these types of companies.

Another consideration is that some of the foreign companies that access the U.S. markets through the reverse merger process have been using small U.S. auditing firms, some of which may not have the resources to meet its auditing obligations when all or substantially all of the private company's operations are in another country. As a result, such auditing firms might not identify circumstances where these companies may

---

not be complying with the relevant accounting standards.[4] This can result in increased risks for investors.

## Risk Disclosure

Public companies are required to disclose the risks of investing in their stock in a number of filings with the SEC. Below are examples of risk factor disclosures that some reverse merger companies have used in their SEC filings:

- *Because we became public by means of a "reverse merger," we may not be able to attract the attention of major brokerage firms.*

- *Additional risks may exist since we will become public through a "reverse merger." Securities analysts of major brokerage firms may not provide coverage of us since there is little incentive to brokerage firms to recommend the purchase of our common stock. We cannot assure you that brokerage firms will want to conduct any secondary offerings on behalf of our company in the future.*

- *The transaction involves a reverse merger of a foreign company into a domestic shell company; as a result, there is no history of compliance with United States securities laws and accounting rules.*

- *Our management has no experience in managing and operating a public company. Any failure to comply or adequately comply with federal securities laws, rules or regulations could subject us to fines or regulatory actions, which may materially adversely affect our business, results of operations and financial condition.*

- *We will incur significant costs to ensure compliance with United States corporate governance and accounting requirements.*

- *We may not be able to meet the filing and internal control reporting requirements imposed by the Securities and Exchange Commission resulting in a possible decline in*

---

4  See Public Company Accounting Oversight Board Staff Audit Practice Alert No. 6: Auditor Considerations Regarding Using the Work of Other Auditors and Engaging Assistants from Outside the Firm (July 12, 2010).

*the price of our common stock and our inability to obtain future financing.*

- *As a public company, we are obligated to maintain effective internal controls over financial reporting. Our internal controls may not be determined to be effective, which may adversely affect investor confidence in us and, as a result, decrease the value of our ordinary shares.*

- *The relative lack of public company experience of our management team may put us at a competitive disadvantage.*

## Recent Enforcement Actions Involving Reverse Merger Companies

In recent months, the SEC has suspended trading in a number of reverse merger entities: (1) Heli Electronics Corp. (HELI); (2) China Changjiang Mining & New Energy Co (CHJI); (3) RINO International Corporation (RINO); (4) Advanced Refractive Technologies, Inc. (ARFR); (5) HiEnergy Technologies, Inc. (HIET); and (6) Digital Youth Network Corp. (DYOUF):

- On March 21, 2011, the SEC suspended trading in HELI because questions had arisen regarding the accuracy and completeness of information contained in HELI's public filings concerning, among other things, the company's cash balances and accounts receivable. HELI also failed to disclose that its independent auditor had resigned due to accounting irregularities.

- On April 1, 2011, the SEC suspended trading in CHJI because questions had arisen regarding the accuracy and completeness of information contained in CHJI's public filings concerning, among other things, the company's financial statements for 2009 and 2010. CHJI also failed to disclose that it filed its most recent Form 10-Q without the required review of interim financial statements by an independent public accountant and that the company's independent auditor had resigned, withdrawn its audit opinion issued April 16, 2010 relating to the audit of the company's consolidated financial statements as of December 21, 2009, and informed the company that the financial state-

---

ments for quarters ended March 31, June 30, and September 30, 2010 could no longer be relied upon.

- On April 11, 2011, the SEC suspended trading in RINO because questions had arisen regarding the accuracy and completeness of information contained in RINO's public filings since, among other things, the company had failed to disclose that the outside law firm and forensic accountants hired by the company's audit committee to investigate allegations of financial fraud at the company had resigned after reporting the results of their investigation to management and the board, and that the chairman and independent directors have also resigned.  In addition, questions had arisen regarding the size of RINO's operations and number of employees, the existence of certain material customer contracts, and the existence of two separate and materially different sets of corporate books and accounts.

- On May 3, 2011, the SEC suspended trading in ARFR and HIET due to a lack of current and accurate information about the companies because they had not filed certain periodic reports with the SEC.

- On May 12, 2011, the SEC suspended trading in DYOUF due to a lack of current and accurate information about the company because it had not filed certain periodic reports with the SEC.

In addition to trading suspensions, the SEC has recently revoked the securities registration of several reverse merger companies.  In each instance, the SEC revoked the registration because of a failure to make required periodic filings—filings that should contain information of critical importance to U.S. investors.  Importantly, once the SEC has revoked a company's securities registration, no broker or dealer or national security exchange can execute a trade in the stock unless the company files to re-register its stock.

*Be careful when considering investing in the stocks of reverse merger companies.*

## Take Precautions:
## Look for Reliable Information

Investors should be careful when considering investing in the stocks of reverse merger companies and should make sure that they have accurate and up-to-date information about a company before investing.

✔ Research the Company: Always research a company before buying its stock, particularly if the company has been subject to a trading suspension or has been delisted from an exchange. Evaluate the company's finances, organization, and business prospects. This type of information often is included in filings that a company makes with the SEC.

✔ Review the Company's SEC Filings: This information is free and can be found on the Commission's EDGAR filing system.

✔ Be Aware of Companies that do not File Reports with the SEC: Some companies are not required to file reports with the SEC. These are known as "non-reporting" companies.  Be aware of the risks of trading the stock of such companies, as there may not be current and accurate information that would allow you to make an informed investment decision.  Because an operating company that is not required to file reports with the SEC is, by definition, a non-reporting company, historical information about that company is likely to be limited.  Further, information about a public reporting shell company that a non-reporting operating company merges into, in a reverse merger, would not be relevant to the operating company.

✔ Be Skeptical: Whenever someone gives you a "hot" tip, always ask what motivated them to do so.  Make sure that you do your own research instead of relying on what somebody has told you.  Keep in mind that information from online blogs, social networking sites, and even a company's own website may be inaccurate and sometimes intentionally misleading.

If you cannot obtain current, reliable information about a company and its stock, this may not be a suitable investment for you.

## Related Information

[Administrative Proceeding (Dec. 21, 2010)](#)

> We have provided this information as a service to investors. It is neither a legal interpretation nor a statement of SEC policy. If you have questions concerning the meaning or application of a particular law or rule, please consult with an attorney who specializes in securities law.

