Joseph N. Akrotirianakis (Bar No. 197971)
  jakro@kslaw.com
Zachary W. Byer (Bar No. 301382)
  zbyer@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

Brian P. Miller (admitted *pro hac vice*)
  bmiller@kslaw.com
Samantha J. Kavanaugh (admitted *pro hac vice*)
  skavanaugh@kslaw.com
Ross E. Linzer (admitted *pro hac vice*)
  rlinzer@kslaw.com
KING & SPALDING LLP
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 4700
Miami, Florida, 33131
Telephone:   (305) 462-6000
Facsimile:   (305) 462-6100

Attorneys for Defendants
MULLEN AUTOMOTIVE, INC.,
MULLEN TECHNOLOGIES, INC., AND DAVID MICHERY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION | Case No. 2:22-cv-03026-DMG-AGR<br>Honorable Dolly M. Gee<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Honorable Dolly M. Gee<br><br>Date: April 14, 2023<br>Time: 9:30 a.m.<br>Courtroom No.: 8C<br><br>Consolidated Amended Class Action Complaint Filed: September 23, 2022 |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

I. PLAINTIFF LACKS STANDING TO CHALLENGE MULLEN TECH'S STATEMENTS ...........................................................................3

    A. Binding Supreme Court and Other Persuasive Case Law Demonstrate Plaintiff Lacks Standing. .................................................4

    B. Plaintiff's Authorities Do Not Address the Circumstances Here. .............7

    C. Policy Considerations Weigh Against a Finding of Standing. ..................9

II. PLAINTIFF'S SECTION 10(b) CLAIM FAILS...............................................10

    A. Plaintiff Fails To Adequately Allege Falsity. .......................................10

    B. Defendants' Statements Are Not Actionable.........................................12

    C. Forward-Looking Statements Are Protected by the PSLRA. .................13

    D. Plaintiff Fails to Adequately Allege Scienter. ......................................14

        1. The Opposition Fails Adequately to Allege That Michery Knowingly or Recklessly Omitted Material Facts. .......................15

        2. Plaintiff's Scienter Allegations Are Not Reliable. ........................20

        3. The Opposition Does Not State a Plausible Motive For Fraud. .....22

    E. Plaintiff Does Not Sufficiently Plead Loss Causation............................23

III. PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY .............24

IV. THE COURT SHOULD DISMISS DEFENDANTS WITH PREJUDICE BECAUSE LEAVE TO AMEND WOULD BE FUTILE................................24

V. CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
2022 WL 1750033 (N.D. Cal. May 31, 2022)........................................................22

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ...................................................................................18

*In re Alteryx, Inc. Sec. Litig.*,
2021 WL 4551201 (C.D. Cal. June 17, 2021)........................................................22

*In re Altisource Portfolio Sols., S.A. Sec. Litig.*,
2015 WL 12001262 (S.D. Fla. Sept. 4, 2015).........................................................6

*In re Atossa Genetics Inc Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) ...........................................................................12, 13

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................19

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)........................................................................................4, 5, 6

*Carol Gamble Tr. 86 v. E-Rex, Inc.*,
84 F. App'x 975 (9th Cir. 2004)............................................................................16

*In re CCIV/Lucid Motors Sec. Litig.*,
4:21-CV-09323-YGR, 2023 WL 325251 (N.D. Cal. Jan. 11, 2023) ...................8

*In re Cutera Securities Litigation*,
610 F.3d 1103 (9th Cir. 2010) ...............................................................................14

*In re Downey Sec. Litig.*,
2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ........................................................22

*Duane & Virginia Lanier Tr. v. SandRidge Mississippian Tr. I*,
361 F. Supp. 3d 1162 (W.D. Okla. 2019)................................................................6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 226 (2005)...............................................................................................23

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Farrar v. Workhorse Grp., Inc.*,
  2021 WL 5768479 (C.D. Cal. Dec. 2, 2021)..............................................................11

*Gammel v. Hewlett-Packard Co.*,
  905 F. Supp. 2d 1052 (C.D. Cal. 2012)..................................................................19

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007)..................................................................24

*Harbinger Cap. Partners LLC v. Deere & Co.*,
  632 F. App'x 653 (2d Cir. 2015) ...............................................................................6

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)..............................................23, 24

*In re In Vision Techs., Inc. Sec. Litig.*,
  2006 WL 8443967 (N.D. Cal. 2006) ......................................................................16

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)...........................................................................................5, 20

*Jun Shi v. Ampio Pharm., Inc.*,
  2020 WL 5092910 (C.D. Cal. June 19, 2020)......................................................23

*Katz v. China Century Dragon Media, Inc.*,
  2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ......................................................24

*Klein v. Altria Grp., Inc.*,
  525 F. Supp. 3d 638 (E.D. Va. 2021) ......................................................................8

*Lea v. TAL Educ. Grp.*,
  837 F. App'x 20 (2d Cir. 2020) ..............................................................................23

*In re LeapFrog Enter., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007).................................................................12

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ...............................................................................23

*Maguire Fin. v. PowerSecure*,
  876 F.3d 541 (4th Cir. 2017) .................................................................................18

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  54 F.4th 82 (2d Cir. 2022) ...........................................................................5, 6, 9

iii

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ........................................................9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................................................................16, 22

*In re Novatel Wireless Sec. Litig.*,
830 F. Supp. 2d 996 (S.D. Cal. 2011) ..................................................................23

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks
Corp.*, 369 F.3d 27 (2d Cir. 2004) ..........................................................5, 6, 8, 9

*Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) ................................................................................23

*Plumley v. Sempra Energy*,
2017 WL 2712297 (S.D. Cal. June 20, 2017) ..................................................7, 8

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ..............................................................................14

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022)............................................................11, 20

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ................................................................................17

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ................................................................................19

*In re Romeo Power Inc. Sec. Litig.*,
2022 WL 3701095 (S.D.N.Y. Aug. 25, 2022) .............................................13, 14

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000) ...................................................................................8

*Sgalambo v. McKenzie*,
739 F. Supp. 2d 453 (S.D.N.Y. 2010) ..................................................................17

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ..........................................................................15, 21

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009) ..............................................................................16

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) .......................................................... 12, 20

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................ 3, 15

*Tripp v. Indymac Fin., Inc.*,
    2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ............................................... 22

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    20-CV-08585 (LJL), 2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022) ................... 6

*Wochos v. Tesla, Inc.*,
    2018 WL 4076437 (N.D. Cal. Aug. 27, 2018) ................................................ 12

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ........................................................................... 14

*Zaller v. Fred's, Inc.*,
    2021 WL 7541401 (W.D. Tenn. Mar. 31, 2021) ............................................... 6

*Zelman v. JDS Uniphase Corp.*,
    376 F. Supp. 2d 956 (N.D. Cal. 2005) ............................................................. 7, 9

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
    2022 WL 13800633 (C.D. Cal. Oct. 20, 2022) ................................ 2, 10, 11, 13

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................ 20, 22, 24

**Statutes**

15 U.S.C. § 78j(b) ................................................................................................ *passim*

15 U.S.C. § 78t-1(a) ..................................................................................... 3, 24, 25

15 U.S.C. § 78u-4 ................................................................................................ *passim*

15 U.S.C. § 78u-5 .......................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................................... 2

17 C.F.R. § 240.10b-5 ....................................................................................... 5, 7, 8, 24

## **PRELIMINARY STATEMENT**

Plaintiff continues to brandish the allegations made in a highly speculative "short-seller" report but fails to adequately allege that she has met the stringent requirements to bring a federal securities fraud claim against Defendants. The Opposition highlights, rather than rehabilitates, the Amended Complaint's fatal deficiencies. Continuing with the same theory that Defendants lied about virtually all aspects of their business, the Opposition offers nothing new to overcome the significant defects in Plaintiff's claim, including that (1) she lacks standing to sue based on most of the statements at issue, which were made by Mullen Tech (the "Private Company Statements"), and (2) she otherwise fails to sufficiently plead a Section 10(b) claim related to any of Defendants' statements.

Plaintiff's entire approach is based on fraud-by-hindsight—she attacks an electric vehicle company in a nascent industry for announcing forward-looking plans that have not come to fruition exactly as expected, as Defendants adequately warned. The Opposition continues to rely on retroactive allegations to try to twist normal operational issues, and unforeseeable developments, into claims of securities fraud. But each of the challenged press releases and public statements was believed to be factually accurate and well-founded when made, placed in the proper context of Mullen Auto's public disclosures and cautionary language.

Plaintiff fails to avoid her theory's most significant flaw, that it mostly relies "on an alleged series of statements that were **almost exclusively** made by a **private** entity whose stock she never purchased: Mullen Tech—not Mullen Auto, or its predecessor, Net Element, Inc. ("Net Element"), which were the **only** entities in which the purported class members purchased securities." *See* Motion to Dismiss at 1. Plaintiff also conveniently discounts the cautionary statements in the challenged press releases, and

the critical risk disclosures in Mullen Auto and Net Element's SEC[1] filings—which were specific and not merely "boilerplate." Opp. at 16.

The Opposition fails to save the claims in Plaintiff's Amended Complaint for several reasons.

First, the Opposition fails to adequately allege that Plaintiff has standing to bring securities claims related to any press release or public statement made by Mullen Tech, because she did not purchase that entity's securities. Plaintiff's case law suggesting that a different standard applies is unavailing and does not establish that this Court should deviate from the sound reasoning from the United States Supreme Court and Second Circuit. Because Plaintiff lacks standing to sue based on the Private Company Statements, it follows that ten out of the fourteen allegedly fraudulent statements are not actionable.

Second, Plaintiff cannot adequately allege falsity as to any of the challenged statements because her allegations are based entirely on unreliable information that can never meet the requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). Claims against Defendants—including corporate executive David Michery ("Michery")—cannot withstand scrutiny under the PSLRA by relying on anonymous sources that exclaim their opinions about Defendants' operations despite not having adequate personal knowledge to support those opinions.

Third, many of the challenged statements represent corporate optimism or puffery, rather than actionable omissions or misleading statements, and are protected by the safe harbor provisions of the PSLRA. They fall squarely into the definition of forward-looking statements under the PSLRA, because they were announcements about "plans and objectives of management for *future* operations;" textbook forward-looking statements. 15 U.S.C. § 78u-5(i)(1)(b) (emphasis added).

---

[1] Capitalized terms have the same meaning as those in Defendants' Motion to Dismiss [ECF No. 52].

DEFENDANTS' REPLY ISO MOTION TO DISMISS

Fourth, the Opposition fails to adequately address the Court's obligation to balance scienter inferences and competing non-fraud inferences to determine which is more plausible, as required by *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The Opposition further demonstrates that any scienter inference is neither cogent nor at least as compelling as the competing non-fraud inference, providing yet another basis to dismiss the Amended Complaint.

Finally, Plaintiff cannot sufficiently allege that the Hindenburg Report or Mullen Auto's April 18, 2022, press release were corrective disclosures—which destroys her loss causation claim. And because the Section 10(b) claim fails overall, so does the Section 20(a) claim.

In sum, this lawsuit is merely an attempt to recoup money from a stock drop and take advantage of an inflammatory and highly speculative short-seller report. Plaintiff mostly relies on the Hindenburg Report to manufacture allegations that Defendants lied about their partnerships, battery testing results, prospective customer sales—virtually all aspects of their business. But, Plaintiff cannot overcome the significant flaws in her fraud-by-hindsight theory. The Amended Complaint must be dismissed, with prejudice, for the reasons outlined in Defendants' Motion to Dismiss.

## I.   PLAINTIFF LACKS STANDING TO CHALLENGE MULLEN TECH'S STATEMENTS

It is undisputed: Plaintiff did not invest in Mullen Tech, a private entity. Plaintiff has not demonstrated how she possesses standing to assert a Section 10(b) claim against Defendants based on Mullen Tech's statements about its own operations. Rather than face facts at the onset, Plaintiff instead buries any discussion of standing—a threshold inquiry—to Section IX at the tail end of her Opposition. There, Plaintiff flippantly characterizes Defendants' critique of her lack of standing as "mere technicalities of corporate form," Opp. at 28, completely ignoring the massive foundational crack upon

DEFENDANTS' REPLY ISO MOTION TO DISMISS

which her Amended Complaint rests.[2]  Plaintiff's dismissiveness is especially egregious given that she not only sues individually, but also seeks to represent an entire class.

Plaintiff incorrectly submits that, by pointing out her inability to challenge the Private Company Statements, Defendants are requesting a "sweeping change in law." *Id.*  Not so.  Plaintiff conveniently ignores that it has been settled authority from the U.S. Supreme Court—for nearly 50 years—that she cannot bring suit based on alleged misstatements made by a company in which she did not invest.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (limiting Section 10(b)'s implied private right of action to plaintiffs "who have at least **dealt in** the security to which the prospectus, representation, or omission relates.") (emphasis added).  The applicable case law and policy considerations all mandate the dismissal of Plaintiff's claims premised upon the Private Company Statements.

### A.   Binding Supreme Court and Other Persuasive Case Law Demonstrate Plaintiff Lacks Standing.

Plaintiff was not, in the words of the Supreme Court, a "purchaser[] or seller[] of the *stock in question.*"  *Blue Chip Stamps*, 421 U.S. at 742 (emphasis added).  Under this purchaser-seller rule, she therefore lacks standing to sue based on Mullen Tech's Private Company Statements.  Plaintiff offers a tortured reading of *Blue Chip Stamps*, which disregards the decision's plain language and attempts to unreasonably narrow the holding to preclude dismissal.  Under Plaintiff's view, the keys to the courthouse could be given to anyone who simply purchases or sells **any** security, regardless of whether such transaction was in the company accused of a misstatement. Opp. at 29.  Adopting Plaintiff's flawed interpretation of *Blue Chip Stamps* would fully swing the pendulum in the opposite direction and radically expand Section 10(b)'s implied private right of

---

[2]  The bulk of the Amended Complaint concerns these Private Company Statements, which make up ten of the fourteen statements at issue.

action.[3]

The Ninth Circuit has not addressed the specific issue here.  However, following the holding of *Blue Chip Stamps*, the Second Circuit has repeatedly recognized that "[s]tockholders do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase."  *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.* ("*Nortel*"), 369 F.3d 27, 34 (2d Cir. 2004).  Yet that is exactly what Plaintiff alleges here.  More recently, the Second Circuit confronted another factually similar situation where the plaintiff did not purchase securities of the issuer about which misstatements were alleged to have been made, but instead—like here—made statements about a separate company that was the public company's merger target.  *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) (cited in the Opposition as "*Frutarom*;" similarly cited here for consistency).

Contrary to Plaintiff's assertion that *Frutarom* "creates new law," the decision simply applied the well-settled principles from *Blue Chip Stamps* and *Nortel* that "Section 10(b) standing does not depend on the significance or directness of the relationship between two companies."  *Id*. at 88.  Importantly, "the fact that [*Frutarom*] involved a merger instead of the sale of a business unit . . . does not change the analysis," which requires that plaintiffs have "at least dealt in the security to which the prospectus, representation, or omission relates."  *Id*. at 88-89 (quoting *Blue Chip Stamps*, 421 U.S. at 747).

Plaintiff erroneously suggests that *Frutarom* was an "expansive reading" of

---

3   Plaintiff improperly conflates the standing to bring a 10(b) claim with the interpretation of the statute itself.  *See* Opp. at 28-29.  Neither Section 10(b) nor Rule 10b-5 explicitly provide for a private right of action.  Thus, courts construe this implied right narrowly, which militates against Plaintiff's expansive reading.  *See, e.g., Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011) (courts "must give narrow dimensions" to Section 10(b)'s scope) (internal quotations omitted).

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Nortel*'s holding.[4]  However, this ignores the Supreme Court's concern, echoed in *Nortel*, that a broad private right of action would open the floodgates to vexatious and abusive litigation. *Nortel*, 369 F.3d at 33 (citing *Blue Chip Stamps*, 421 U.S. at 749-50).  This concern is exemplified here, where Plaintiff bases her losses on unsubstantiated claims from a short-seller's report about statements made by and regarding a business in which she did not purchase stock—hoping to insure her losses from an investment in an entirely separate entity.  Plaintiff attempts to portray the Second Circuit as an outlier but ignores that these same concepts have long been endorsed by other courts. *See, e.g., Duane & Virginia Lanier Tr. v. SandRidge Mississippian Tr. I*, 361 F. Supp. 3d 1162, 1171 (W.D. Okla. 2019) ("[S]hareholders of one public company," are not entitled "to bring suit against another public company that neither issued nor sold stock to them"); *In re Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at *4 (S.D. Fla. Sept. 4, 2015) (same).  The established authorities make clear that Plaintiff lacks standing to bring 10(b) claims based on the Private Company Statements.[5]

_____

[4] Plaintiff relies on *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 20-CV-08585 (LJL), 2022 WL 4085677, at *17 (S.D.N.Y. Sept. 2, 2022) to discredit *Nortel* and *Frutarom*. Opp. at 34.  But *Turquoise Hill* involved a factually distinguishable situation where a third party "made statements directly about the issuer's *own* securities." *Id.* (emphasis added).  Thus, the reasoning there does not apply here, where Mullen Tech made statements about its *own* business—not Net Element's.  Also, *Nortel* remains good law, and courts continue to follow it. *See Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015); *see also, e.g., Zaller v. Fred's, Inc.*, 2021 WL 7541401, at *17-19 (W.D. Tenn. Mar. 31, 2021).

[5] Grasping at straws, Plaintiff argues that she would have standing even if the Court agrees with the Second Circuit's reasoning.  Plaintiff contends that just because Mullen Tech's press releases referred to Net Element and the planned reverse merger, those statements satisfy the requisite nexus to somehow be about Net Element's business.  Opp. at 34.  But a review of the Private Company Statements readily shows that they are only about Mullen Tech's *own* operations—not about Net Element, which at that time was a payment processing company.  The distinction Plaintiff tries to make only distracts the Court from the true inquiry—whether Plaintiff's investment in Net Element

6

DEFENDANTS' REPLY ISO MOTION TO DISMISS

### B.    Plaintiff's Authorities Do Not Address the Circumstances Here.

Plaintiff misdirects the Court regarding the appropriate test for evaluating whether standing exists and focuses instead on whether the Private Company Statements "bear a direct relationship to the purchased securities." Opp. at 28. But it is wrong to contend that Plaintiff's investment in the public companies was linked to Mullen Tech securities, such that she has standing to pursue the alleged claims.

Plaintiff unpersuasively cites cases that are not on point and do not refute the sound reasoning discussed above. For example, Plaintiff erroneously describes *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005) as the "leading case on point." *See* Opp. at 29. But *Zelman* does not support Plaintiff's position. *Zelman* concerned investors who purchased derivative securities *directly linked* to the defendant company, unlike Plaintiff here. *See Zelman*, 376 F. Supp. 2d at 958 (investors purchased equity-linked debt securities whose value "depended solely on the price at which JDSU common stock was trading"). It is an unfair extrapolation to suggest that *Zelman* would endorse statutory standing for Plaintiff here, where the only linkage is a subsequent potential merger.[6]

Similarly, *Plumley v. Sempra Energy*, 2017 WL 2712297 (S.D. Cal. June 20, 2017) is unavailing. Opp. at 30. Unlike in *Plumley*, Plaintiff does not allege that her claims are based on statements about a *subsidiary* of the company she transacted in. *Id.* at *1. The *Plumley* court explicitly based its decision on the fact that other courts "have allowed a plaintiff to pursue section 10(b) or Rule 10b-5 claims against a subsidiary who is the alleged source of misleading information." *Id.* at *5. Here, Mullen Tech

(or Mullen Auto) gives her any standing to sue based on statements about a different company that was not part of Net Element at the time.

[6] *Zelman* does, however, preclude Plaintiffs from arguing that the "in connection with" inquiry, that is part of Section 10(b), confers standing. *Id.*, 376 F. Supp. 2d at 961 ("courts have not considered the 'in connection with' issue to be one of standing. Rather, courts have construed the 'in connection with' requirement as an element of the plaintiff's prima facie case.").

was a completely separate entity, and was not part of Net Element's corporate structure or otherwise linked to Net Element securities when it made the Private Company Statements.

Plaintiff also relies on out-of-circuit decisions where courts addressed distinguishable facts or did not even address standing. For instance, Plaintiff relies upon a Third Circuit decision that did not analyze or even rule on standing; instead it considered the "in connection with" requirement of a Section 10(b) claim. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 177 (3d Cir. 2000). Additionally, *Nortel* expressly discussed the limited applicability of *Semerenko* on the standing issue, stating, "the opinion never explicitly addressed the standing requirement of Rule 10b-5, and this limits its persuasiveness." *Nortel*, 369 F.3d at 33. Defendants have not located a single decision from the Ninth Circuit or elsewhere that has relied on *Semerenko* for Plaintiff's broad proposition.

Plaintiff's reliance on *Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 658 (E.D. Va. 2021) is also unhelpful. In *Klein*, investors in Altria Group were found to possess standing to sue JUUL over statements it made in furtherance of an alleged fraudulent scheme with Altria Group, *after* Altria Group acquired a 35% stake in JUUL and let it use its "retail, marketing and distribution apparatus." *Id*. at 651. This fact makes *Klein* similar to the *Plumley* case, involving a subsidiary of the company whose shares the plaintiff purchased. *Plumley* 2017 WL 2712297 at *1. In contrast, the Private Company Statements here solely concerned Mullen Tech and were made by Mullen Tech *prior* to the reverse merger between it and Net Element.

Finally, after the filing of her Opposition, Plaintiff submitted the decision in *In re CCIV/Lucid Motors Sec. Litig*., 4:21-CV-09323-YGR, 2023 WL 325251 (N.D. Cal. Jan. 11, 2023). *See* ECF No. 59. In *Lucid*, in a completely different context involving a special purpose acquisition company ("SPAC"), the court found plaintiffs did possess Section 10(b) standing. As an initial matter, Defendants submit that the *Lucid* decision, which is non-binding on this Court, was wrongly decided on the issue of standing, and

ignored that *Frutarom* is directly on point. But in any event, the factual circumstances here and the interplay between Mullen Tech and the public companies are far afield from those involving a SPAC. In *Lucid*, where the SPAC plaintiff invested funds to be held in trust by a shell entity created solely for the purpose of then purchasing the target company, there was significantly more linkage between the SPAC and the target company. The *Lucid* scenario is more akin to the facts in Plaintiff's cited cases, such as *Zelman*. Conversely, in this case, the Private Company Statements were made by, and about, an entirely distinct entity from the one in which Plaintiff transacted. Net Element was not a SPAC, had its own separate and independent operations in the payment processing business, and did not hold investors funds in trust to be used to acquire Mullen Tech. The *Lucid* decision bears no relevance to the facts of this case, and Plaintiff cannot substantiate her avowal that she has standing to sue based on the Private Company Statements.

## C. Policy Considerations Weigh Against a Finding of Standing.

Contrary to Plaintiff's assertion, Defendants do not propose a rule that departs from well-reasoned precedent or authorizes "blatant fraud." Instead, Defendants ask the Court to "heed[] the Supreme Court's instructions to not expand Section 10(b)'s private right of action beyond its present boundaries and hold[] that plaintiffs lack standing to sue [Net Element or Mullen Auto] for statements [Mullen Tech] made about [its own business]." *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *32 (S.D.N.Y. Mar. 30, 2021). Any other approach (like the *Lucid* decision), contrary to the holdings in *Frutarom*, *Nortel*, and the other cited authorities, would "allow any investor to sue any entity simply because that entity made misrepresentations that happened to affect the price of a security purchased or sold by the investor." *Id.* at *29; *see* also *Frutarom*, 54 F. 4th at 86 (warning against an "endless case-by-case erosion of the purchaser-seller rule," which would create "such a shifting and highly fact-oriented disposition of statutory standing" that "is not a satisfactory basis for a rule of liability imposed on the conduct of business transactions") (internal

quotations omitted).

Indeed, Plaintiff's interpretation of statutory standing would transform this country's securities laws. Corporations and their officers and directors would face potential liability not only to their company's investors, but to unknown persons and entities who invest in securities that are not directly a function of that corporation's value. Section 10(b) does not and should not extend so far. Such liability has no support in prior precedent, and this Court should not break new ground to expand Section 10(b)'s private right of action beyond what the Supreme Court has recognized. The misrepresentation claims based on the Private Company Statements should be dismissed because Plaintiff lacks standing.

## II.    PLAINTIFF'S SECTION 10(b) CLAIM FAILS

### A.    Plaintiff Fails To Adequately Allege Falsity.

Even though Plaintiff only has standing to sue based on the Public Company Statements by Net Element or Mullen Auto (Statements 1, 12-14), the Opposition continues to condemn all of the challenged statements as if they are actionable. Yet, most of the statements addressed in the Opposition are attributable to Mullen Tech or Michery as the private company's then-CEO (*see* Opp. at 6-13), and as such, cannot form the basis of a Section 10(b) claim.

Even so, Defendants did not omit material information in *any* of the challenged statements, but instead made optimistic statements they reasonably believed to be true, in the context of adequate risk disclosures. Plaintiff challenges Defendants' statements about their partnerships, battery testing, and planned customer sales, but fails to show that Defendants did not reasonably believe the information in those statements when made. Instead, Plaintiff adopts a fraud-by-hindsight approach by arguing that any discussed plan that did not come to fruition must have been false.

Plaintiff's cited authority is inapposite. For instance, in alleging that Defendants' various announcements of planned customer orders were misleading, Plaintiff relies on *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *2, *6-7 (C.D.

10

Cal. Oct. 20, 2022), where the court found statements announcing "14,000 reservations" of electric vehicles to be misleading. But there, the court found those statements to be misleading because the announcement suggested that the company had received 14,000 *paid* reservations—when in fact they had not—which misled investors regarding the company's associated revenues. *Id*. at *7. Here, in contrast, the customer order statements only announced *planned* orders—not reservations or deposits guaranteeing any sort of revenue.

Plaintiff relies solely on the Hindenburg Report to allege that Michery "concealed material information" related to whether the planned orders could in fact be fulfilled because "Mullen lacked EPA approval to sell the vehicles" and "had yet to hire the specialized workers needed" to fulfill the orders. Opp. at 8. Relying on this speculative information, Plaintiff cites *Farrar v. Workhorse Grp., Inc*., 2021 WL 5768479, at *3-*4 (C.D. Cal. Dec. 2, 2021), to claim that awareness of "undisclosed facts tending to seriously undermine" a defendant's ability to fulfill electric vehicle orders because of insufficient personnel was misleading. Opp. at 8-9. But the *Farrar* allegations were not based on a speculative short-seller report, as here, but rather on seemingly reliable confidential witness testimony, including from an "Executive Director of Human Resources" responsible for the hiring. *Id*. at 5. No such reliable allegations exist here.

Moving on to the battery testing claims, Plaintiff relies on *In re QuantumScape Sec. Class Action Litig*., 580 F. Supp. 3d 714, 735 (N.D. Cal. 2022), where the court found that it was false or misleading to affirmatively state that electric batteries were tested in "uncompromised" conditions when they were not. No such affirmative misrepresentation occurred here—and Plaintiff's reliance on statements by Tom Gage ("Gage") do not support falsity. Plaintiff has no reliable facts that show that Defendants omitted information from the announced battery test results. Gage's opinion "additional variables would need to be taken into consideration . . . to reach the conclusion set forth in Mullen's statement," Opp. at 10, are just that; his opinion. Gage offers no reliable facts to support the claim that Defendants omitted information in the press releases

announcing battery testing results.  Indeed, Gage himself concedes his lack of personal knowledge "about Mullen's research capabilities."  *See* Motion to Dismiss at 27.

Finally, Plaintiff repeatedly questions Defendants' allegedly "nonexistent" partnerships but cannot adequately allege that Michery (1) did not reasonably believe these partnerships were in place when announced, or (2) omitted information from those announcements.  Indeed, "[f]ederal securities laws do not punish companies for failing to achieve their targets."  *Wochos v. Tesla, Inc*., 2018 WL 4076437 (N.D. Cal. Aug. 27, 2018).  While Defendants concede that Mullen Auto's business in this rapidly developing industry experienced changes in plans, Plaintiff's entirely speculative and conclusory allegations that Michery intentionally misled investors about commercial partnerships, especially with the backdrop of adequate risk disclosures, are insufficient.  And Plaintiff's theory that she may rely on the Hindenburg Report to support these speculative claims of falsity is not persuasive; that report lacks the comprehensiveness appreciated by the court in *Snellink*.  *See Snellink v. Gulf Res., Inc*., 870 F. Supp. 2d 930, 938 (C.D. Cal. 2012).

### B.      Defendants' Statements Are Not Actionable.

Defendants' statements of corporate optimism or puffery—including those expressing a positive outlook on Mullen Tech's partnerships, battery testing results, and anticipated sales—are protected and not actionable.  The Opposition focuses on Michery's March 30, 2022 statement announcing a potential sale to a large customer.  Yet, taken in their entire context, a reasonable investor would understand that vague statements such as that a large customer "is going to buy a lot of these vehicles" were expressions of general optimism about the potential for the sale to close.  *See e.g., In re LeapFrog Enter., Inc. Sec. Litig*., 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague statements such as "[t]his is going to be a very big second half for us" not actionable).

Plaintiff's cite to *In re Atossa Genetics Inc. Sec. Litig*., 868 F.3d 784, 801-02 (9th Cir. 2017), to allege that even if Michery believed his opinions, they somehow did not "fairly align[] . . . with the information" in his possession, does not save her claims.

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Atossa* is inapposite because, there, it was adequately alleged that the defendant's statement that "FDA clearance risk had been achieved" for its medical device did not "fairly align[]" with what it *knew*—that the FDA had sent the company a letter warning that the company lacked FDA clearance, and the company submitted a response letter to the FDA on exactly the same day as the statement at issue. *Id*. at 791-92, 802. Plaintiff alleges no similar facts here.

### C.    Forward-Looking Statements Are Protected by the PSLRA.

There is no dispute that the PSLRA's Safe Harbor applies to forward-looking statements accompanied by meaningful cautionary language.   Plaintiff absurdly contends that "most" of the forward-looking statements about potential partnerships, battery testing results, and planned customer orders "relate in whole or in part to past or historical facts." Opp. at 15.  Yet most of the statements, *at the time issued*, expressed views about the ***future*** prospect of the various categories of Defendants' business that are at issue in the challenged statements.  This is a classic example of pleading fraud by hindsight.   Indeed, statements such as that Mullen Auto "***expects*** to launch the Dragonfly K50" or that "Mullen's testing of solid-state polymer cells ***reveals the potential*** for a 150-kilowatt-hour battery pack" are demonstrably forward-looking. *See* Motion to Dismiss at 16.  And Plaintiff's reliance on an out-of-circuit case, *In re Romeo Power Inc. Sec. Litig.*, 2022 WL 3701095, at *2 (S.D.N.Y. Aug. 25, 2022), to suggest that the Safe Harbor does not apply because information was allegedly omitted from these forward-looking statements is unavailing.  There, it was adequately alleged that the defendant omitted "ongoing" issues that would cause revenues to be less than announced, and therefore, the announcements were not protected regardless of their forward-looking nature. *Id*. at *3.  Plaintiff has not adequately alleged—other than by pure speculation—that adverse ongoing or present facts existed when Defendants made the forward-looking, challenged statements.

Not surprisingly, given the breadth of the risk disclosures, Plaintiff dismisses Defendants' disclosures as "mere boilerplate," without meaningfully engaging with the

disclosures.  For example, Defendants warned that potential operational issues may delay or prevent planned customer orders: "Mullen [Tech] may be unable to develop, manufacture and obtain required regulatory approvals for a car of sufficient quality to appeal to customers **on schedule or at all**, or may be unable to do so on a large scale." *See* Motion to Dismiss at 19.  Defendants also warned about risks related to its partnerships with third parties:

> We are substantially reliant on our relationships with OEMs, suppliers and service providers for the parts and components in our vehicles, as well as for the manufacture of our initial vehicles. If any of these OEMs, suppliers or service partners choose to not do business with us, then we would have significant difficulty in procuring and producing our vehicles and our business prospects would be significantly harmed.

*See id.* at 20.  These specific risk disclosures cautioned about the precise issues that prompted Plaintiff's suit.  Plaintiff wrongly asserts that Defendants must show that the disclosures "sufficiently dispelled the falsity" in challenged statements, Opp. at 16, citing to a pre-PSLRA case applying a different standard.  *See Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996).  Defendants' statements were forward looking and accompanied by meaningful cautionary language; those statements are not actionable. Indeed, "if a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable." *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).  Similarly, Defendants' statements are covered by the bespeaks caution doctrine, which "provides a mechanism by which a court can rule . . . that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect defendants against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1413 (9th Cir. 1994).

### D.     Plaintiff Fails to Adequately Allege Scienter.

Plaintiff has not alleged facts "giving rise to a strong inference" of scienter

against each or any Defendant with respect to any of the alleged misstatements.  15 U.S.C. § 78u-4(b)(2); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 975, 977 (9th Cir. 1999).  The "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs*, 551 U.S. at 314.  Plaintiff fails to, "with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also id*, 551 U.S. at 314.  Nor does Plaintiff present allegations about Defendants' state of mind "in great detail [by] facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 974-75.

### 1.    The Opposition Fails Adequately to Allege That Michery Knowingly or Recklessly Omitted Material Facts.

Plaintiff fails to adequately allege that Michery knowingly or recklessly omitted material facts in public statements about partnerships, battery testing, or customer orders.  Plaintiff's theory that Defendants would expend significant time and resources to promote an electric vehicle business in a nascent and competitive market, without believing in the legitimate objectives of the business, defies the facts, logic, and the law.  The more cogent and compelling inference with respect to each statement is that Defendants reasonably believed the statement to be truthful and not misleading to investors when made.  Defendants operated in an emerging industry with fierce competition and nonetheless addressed—and promptly disclosed—any challenges Mullen Auto's business faced, as well as promoted its future business objectives.  While Plaintiff is correct that "the [scienter] standard is not insurmountable," the standard for fraud is not whether a business' objectives concretely develop, or not.  Opp. at 16.  Yet Plaintiff puts most of her scienter eggs in the basket of fraud-by-hindsight, alleging that if Defendants failed or struggled to accomplish a future business objective, then it must have been fraud ipso facto.

**Partnerships**:   Plaintiff challenges Defendants' statements about announced partnerships with vendors, including battery makers.  While Plaintiff agrees that, to find scienter, the inference must be cogent and at least as compelling as any opposing inference one could draw, she continues to advance an illogical position that Defendants knowingly omitted information.  But Plaintiff cannot adequately allege that Defendants knowingly withheld that any announced partnerships were false or nonexistent at the time the statement was made.  Rather than adopt Plaintiff's conclusory allegations, the far more cogent and compelling inference is that Defendants reasonably believed in the statements about partnerships when made.  Plaintiff continues to rely on speculation, including information from the Hindenburg Report, which does not support any inference of scienter and fails to satisfy the PSLRA's heightened pleading standards. *Carol Gamble Tr. 86 v. E-Rex, Inc*., 84 F. App'x 975, 977 (9th Cir. 2004) ("[P]laintiffs cannot establish scienter by making … general and conclusory allegations."); *In re In Vision Techs., Inc. Sec. Litig*., 2006 WL 8443967, at *6 (N.D. Cal. 2006) (plaintiffs cannot satisfy PSLRA "simply by referencing the conclusory statements of others").

Plaintiff's scienter arguments about Defendants' partnerships simply do not suffice.  For instance, Plaintiff argues that Michery knew that statements about battery partnerships were misleading given his role as "Mullen's all-controlling CEO."  Opp. at 17.  But this bare, inflammatory, and unsupported allegation alone cannot show that Michery withheld any information when making partnership announcements. *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1068 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter.").

Additionally, Plaintiff's reliance on *Siracusano v. Matrixx Initiatives, Inc*., 585 F.3d 1167, 1181 (9th Cir. 2009) is misplaced.  There, the court held that because the Defendants publicly disclosed "the risks of product liability claims in the abstract" when the company withheld that it was in fact being sued in a product liability action, the inference that a high-level executive would know about such action supported scienter.

DEFENDANTS' REPLY ISO MOTION TO DISMISS

*Id.* Here, unlike the *Matrixx* defendants, the more cogent and compelling inference is that Defendants engaged and disclosed partnerships with third-parties while operating an evolving business where investors were fully aware of the disclosed risks and were not misled by any statement about a current or potential partnership.

Likewise, Defendants did not act with deliberate recklessness in disclosing planned partnerships. Plaintiff's reliance on *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) is unavailing. *Malone* involved a large oil spill caused by pipe corrosion that occurred after a corporate officer had told investors that its oil pipeline corrosion risk was "low and manageable" despite already knowing of inspection data showing "objectively high corrosion rates and dramatically increased corrosion in certain places." *Id.* While an oil company executive may be charged with recklessness for failing to disclose existing dramatic rates of corrosion in its oil pipes, here, Plaintiff merely alleges that Michery may not have known whether future expected partnerships would actually come to fruition. That is not reckless, nor does it not provide an inference of scienter. Still, as stated in *Malone*, even if Plaintiff adequately pled recklessness—which she does not—the absence of other facts establishing scienter renders her claim insufficient. *Malone*, 747 F.3d at 569 ("Facts showing mere recklessness … provide some inference of intent, but are not independently sufficient.").

**Battery testing**: Similarly, Plaintiff relies on Michery's position as CEO to plead that he somehow knew and omitted "the extremely limited nature of the battery testing conducted by EV Grid" given that EV Grid produced a report from a previous battery test it had performed. Plaintiff's cited authority does not support the illogical conclusion that the existence of the EV Grid report somehow equates to an adequately pled allegation that Michery knowingly withheld material information about battery test results. *See Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 482 (S.D.N.Y. 2010). In *McKenzie*, the plaintiff alleged that a corporation disclosed positive test results but failed to disclose the accompanying negative test results—and therefore the defendant-

17

DEFENDANTS' REPLY ISO MOTION TO DISMISS

executive was imputed with knowledge, supporting an inference of scienter. *Id.* But Plaintiff does not allege that when Michery announced positive battery test results there were negative test results that he knew about but did not disclose. Indeed, unlike in the case law relied on by Plaintiff, there is no mission-critical, undisclosed fact alleged in this case that rendered any of Defendants' statements about battery test results false when made.

**Customer orders**: Plaintiff argues that it would be "absurd" for Michery to have believed that the announced customer orders would come to fruition based in part on Plaintiff's (and Hindenburg Research's) own assessment of the future needs of the potential customers and size of their businesses. *See* Opp. at 17-18 (alleging that the potential customers were "too small to need" the vehicles they planned to purchase). Essentially, Plaintiff asks the Court to infer that these customers did not need the vehicles they proposed to buy, and then to infer scienter from that first inference. Courts have held that this attempt to "stack[] inference upon inference" cannot support scienter. *See e.g.*, *Maguire Fin. v. PowerSecure*, 876 F.3d 541, 548 (4th Cir. 2017) ("[S]tacking inference upon inference in this manner violates the [PSLRA's] mandate that the strong inference of scienter be supported by facts, not other inferences.").

Neither does Plaintiff's reliance on *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) support her scienter argument, because there the court found that it "would be absurd to suggest" that the defendant executives of Alphabet did not know about a discovered software glitch that had existed for three years. *Id*. at 695. The court considered that the defendants there had been advised on "the scope of the problem, warned of the consequences of disclosure, and presented with a clear decision on whether to disclose those problems." *Id*. at 706. Unlike the software glitch that "exposed private profile data" and thus had an objectively material effect on the defendant's business, here, Plaintiff makes conclusory and entirely speculative claims that Michery "must have" known the announced customers supposedly could not follow through with planned purchases of vehicles. "Speculation regarding what Defendants

must have known is not an adequate substitute for allegations purporting to show what Defendants actually knew." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1079 (C.D. Cal. 2012). Plaintiff failed to adequately plead that Michery had any reason to know that a potential customer would not carry through with, or need, the vehicles to be acquired in a planned purchase when that purchase was announced.

Nor does Plaintiff adequately plead that Michery knew Defendants would be unable to fulfill orders based on a lack of EPA certificates. First, Defendants publicly disclosed the need for EPA certificates to fulfill production goals, and the Opposition omits any compelling facts alleging that Defendants knowingly withheld any information related to EPA certificates. Plaintiff cannot credibly allege that investors were not aware that the potential failure to obtain EPA approval was a disclosed, possible risk to Defendants' operations. Additionally, Plaintiff erroneously relies on *Berson*, when the court found it "absurd" for defendant executives announcing a backlog of contract work to suggest that they did not know of actual stop-work orders related to that work. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008). Plaintiff does not adequately allege that Michery knew of any material concern related to obtaining EPA certificates in anticipation of the planned customer orders, or when the orders were announced. But, even if Michery knew about any EPA certification issues or set-backs on planned sales when he spoke to investors—which Plaintiff has not adequately alleged—that would not permit an inference of wrongful intent. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (knowledge of a fact cannot establish scienter without allegations that the speaker "believed that [he] made false or misleading statements"). Plaintiff also fails to allege, other than in a conclusory fashion, that Michery was deliberately reckless in announcing the customer orders. The Opposition suggests that Michery announced customer orders "without having conducted a basic inquiry" of their potential customers' businesses. Opp. at 18. Plaintiff merely assumes this fact without providing any contemporaneous facts that establish that Michery did not engage in such inquiry.

DEFENDANTS' REPLY ISO MOTION TO DISMISS

Plaintiff's implausible and conclusory scienter allegations are not cogent, compelling, or permissible under the PSLRA's heightened pleading standards.

### 2.      Plaintiff's Scienter Allegations Are Not Reliable.

*First*, Plaintiff's Opposition, like the Amended Complaint itself, is devoted to a laundry list of supposedly incriminating allegations—largely parroting the short-seller Hindenburg Report—that Plaintiff claims shows Mullen Auto is and always has been a fraud.  But these allegations do no such thing.  Unlike some of the other short-seller reports in the cases Plaintiff cites, the Hindenburg Report is not reliable because it is made up of unproven "revelations" from anonymous "confidential informants" rather than from reliable sources based on comprehensive information.  Plaintiff's entire case hinges on this report.  Yet, the Hindenburg Report is not a reliable resource for information on the true operations of Defendants' business, nor about what Michery believed at the time any challenged statement was made.  Unlike cases such as *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714 (N.D. Cal. 2022), where the credible report hinged on statements from *nine* employees of the defendant with personal knowledge of the allegations, there is no such support here.  No reliable foundation exists under the highly speculative and vague assertions in the Hindenburg Report.  *Compare Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930 (C.D. Cal. 2012) (the short-seller report obtained its information from a separate, reliable report produced by a known author and which the court credited for its "comprehensiveness.").  The Hindenburg Report is not based on comprehensive reports or statements from multiple knowledgeable employees or experts with particularized knowledge about Defendants' business.  Hindenburg's (and Plaintiff's) speculation and innuendo alone cannot demonstrate that any earlier statements were made in bad faith or transform the Defendants' good intentions into culpable conduct.

*Second*, the "confidential informant" statements fare no better.  Plaintiff concedes that she must describe confidential informants "with sufficient particularity to establish their reliability and personal knowledge," *Zucco Partners, LLC v. Digimarc Corp.*, 552

F.3d 981, 995 (9th Cir. 2009), but fails to do so. For instance, Plaintiff brushes off the fact that none of these "confidential informants" worked for Mullen Tech by the time it merged with Net Element, much less at the time the statements that Plaintiff has standing to sue on were made (Statements 1, 12-14). *See* Motion to Dismiss at 26. Plaintiff also brushes aside the fact that she fails to provide enough detail to show that the "confidential informants" had any contemporaneous personal knowledge or specific knowledge attributable to Defendants' partnerships, battery testing procedures, or customer orders. *Id*. at 25. Instead, Plaintiff continues to rely on "confidential informant" statements that only contain conclusory and vague allegations such as what Michery "probably knew," which fails to educate the Court about Michery's state of mind when any challenged statement was made. *See* Opp. at 24 (citing Amended Complaint ¶ 77) (FE1 stating that Michery "probably knew he'd never" open the Monrovia, California facility). Such vague speculation is not reliable, nor can it support an inference of scienter under well-established precedent.

*Third*, Plaintiff's source—Tom Gage—admits that he is "not really a battery expert in terms of production" and does "not know about Mullen's research capability." *See* Opp. at 24 (citing Motion to Dismiss at 27). Yet Plaintiff absurdly claims that this admitted lack of personal knowledge about Defendants' business makes Gage's opinions "even more reliable due to his candor." *Id*. But candor about not being qualified to reliably opine about an alleged fraud cannot be credited to support scienter allegations under the Ninth Circuit's high pleading standard. *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d at 974-75.

*Fourth*, Plaintiff's additional "evidence" does not support any strong inference of scienter. *See* Opp. at 21. Plaintiff again highlights Todd Ault's podcast, in which he allegedly attempted to discredit the Hindenburg Report's account of statements made by Gage. Todd Ault is not an employee of Mullen Auto. Thus, how can his interest in discrediting a short-seller's report purportedly support an inference of scienter? It does not. Additionally, Plaintiff's allegation that she has pled an inference of scienter

"because a senior Mullen executive" resigned after a "disagreement with Michery," months before Mullen Auto became public, over the contents of allegedly misleading public statements, is not adequate because "[r]esignations or terminations by themselves do not support a strong inference of scienter." *In re Downey Sec. Litig.*, 2009 WL 736802, at *10 (C.D. Cal. Mar. 18, 2009).

### 3.     The Opposition Does Not State a Plausible Motive For Fraud.

Plaintiff continues to allege that Michery had the motive to lie and simultaneously increase Mullen Auto's stock price based on the insignificant stock sales he made during the class period. But Plaintiff disregards that the sales were not "suspicious" under the *Zucco* factors and ignores that Michery's sales occurred before the allegations in the Hindenburg Report were released. *See* Motion to Dismiss at 28. Indeed, in the context of Michery's total holdings, that he sold a total of 6% of his shares is not suspicious. *See In re Alteryx, Inc. Sec. Litig.*, 2021 WL 4551201 (C.D. Cal. June 17, 2021) (selling "6% of [] total shares" during the class period "is not high enough to give rise to a strong inference of scienter."); *see also* Ex. 17, January 19, 2022 Form 4; Ex. 18, March 18, 2022 Form 4; Ex. 19, March 31, 2022 Form 4 (combined sales totaling 6% of Michery's holdings). Of course, the fact that Michery chose to retain the rest of his holdings throughout the class period provides a more compelling inference against scienter than Plaintiff's contrived theory. Motion to Dismiss at 29; *see also Metzler*, 540 F.3d at 1067 (class period sales in excess of 37% of a defendant's total stock holdings are typically required "to allow insider trading to support scienter"); *Tripp v. Indymac Fin., Inc.*, 2007 WL 4591930, at *4-5 (C.D. Cal. Nov. 29, 2007) (dismissing for lack of scienter where several individual defendants sold no stock, and the sales of the sole defendant who sold "were relatively small given his overall holdings").

Plaintiff also fails to meaningfully engage with Defendants' position that the mere motivation to complete a merger without additional allegations to show that the transaction was suspicious cannot support an inference of scienter. *See* Motion to Dismiss at 29; *See also, Abadilla v. Precigen, Inc.*, 2022 WL 1750033 (N.D. Cal. May

31, 2022) ("stock sales, merger approvals, and offerings—are insufficient particularly without additional allegations indicating they were suspicious.") (emphasis added); *Jun Shi v. Ampio Pharm., Inc.*, 2020 WL 5092910 (C.D. Cal. June 19, 2020) (defendants' desire to "attract merger partners . . . alone does not make a case" for scienter); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (scienter cannot be pled merely by alleging that "officers and directors possess motive and opportunity to enhance a company's business prospects") (citations and quotations omitted).

### E.  Plaintiff Does Not Sufficiently Plead Loss Causation.

Private securities fraud actions are "available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 226, 336, 345 (2005) (emphasis added).  Plaintiff must plead loss causation with particularity. *Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 604-05 (9th Cir. 2014).  Plaintiff must plead a corrective disclosure that offered new information to the market, because a disclosure that does not offer new information is "by definition, not corrective" and therefore inadequate to plead loss causation. *See In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011).

Plaintiff argues that the Hindenburg Report is a corrective disclosure notwithstanding the disclaimer that explicitly states that the information in the report "has been obtained from public sources . . . who are not insiders or connected persons of the stock." *See* Motion to Dismiss at 31.  Plaintiff cites one out-of-circuit opinion to support this argument, but even there, the court highlighted highly inaccessible reported information, including Chinese regulatory filings "of multiple entities in a different language and Chinese court judgments" that were "not readily accessible to investors." *See Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020).  The re-hashing of readily available public information here in no way corrected the market.

Even so, Plaintiff remains unable to allege that the Hindenburg Report authors were qualified to correct the market based on their interpretation of the information in

the report. *See* Motion to Dismiss at 31. Plaintiff's attempt to distinguish *Hunt*, which required plaintiffs who relied on a different Hindenburg Research report to "explain why the Hindenburg authors had the necessary background or expertise to interpret or aggregate the public . . . data," is unavailing. *See Hunt v. Bloom Energy Corp.*, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021). While Plaintiff tries to distinguish the case by alleging that the data interpreted in that report was different than here, such reasoning does not negate that the court found it relevant to consider Hindenburg Research's qualifications to interpret the data. Yet, Plaintiff fails to allege how Hindenburg Research was qualified to interpret the reported information about Defendants' business—nor can she. The Hindenburg Report was not a corrective disclosure.

Nor was the April 28, 2022, press release (Statement 14) a corrective disclosure, because it did not reveal any unknown fact that caused the stock's value to drop. Instead, it simply announced Mullen Auto's plan to produce its own batteries. Indeed, Mullen Auto's public disclosures cautioned about the risks regarding partnerships with third parties; merely disclosing that the company would make its own batteries did not reveal any lie or misrepresentation related to announced partnerships.

## III.   PLAINTIFF FAILS TO PLEAD CONTROL PERSON LIABILITY

Plaintiff's Section 20(a) claim requires dismissal given that the Section 10(b) and Rule 10b-5 claims fail. *Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary"). Additionally, the Opposition does not correct Plaintiff's failure to adequately allege Michery's control. She cannot overcome that "the fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a controlling person." *See Katz v. China Century Dragon Media, Inc.*, 2011 WL 6047093, at *2 (C.D. Cal. Nov. 30, 2011). Plaintiff's Section 20(a) claim fails.

## IV.   THE COURT SHOULD DISMISS DEFENDANTS WITH PREJUDICE BECAUSE LEAVE TO AMEND WOULD BE FUTILE

The Court should deny Plaintiff's request for leave to amend the Amended

DEFENDANTS' REPLY ISO MOTION TO DISMISS

Complaint, because it cannot be cured by amendment. *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007), *judgment entered*, CV 06-7599-JFW PLAX, 2007 WL 3274427 (C.D. Cal. Oct. 16, 2007) ("When amendment would be futile, dismissal may be ordered with prejudice."). Plaintiff's Section 10(b) and 20(a) claims against Defendants are irreparably flawed. Most significantly, Plaintiff lacks standing to sue based on any Mullen Tech statement, eliminating most of the Amended Complaint. Further, Plaintiff also fails to adequately plead the requisite elements of a Section 10(b) or 20(a) claim. Finally, Plaintiff has not even proffered the additional facts she would allege if she were given an opportunity to amend the complaint. No leave for further amendment should be granted.

## V. CONCLUSION

Plaintiff's Opposition cannot overcome her lack of standing to sue based on any Mullen Tech Private Company Statement—which comprises the bulk of this case. Nor does Plaintiff adequately allege that any of Defendants' statements were false or omitted information, especially in the context of the actual risk disclosures. Plaintiff's attempt to allege an inference of scienter fails to pass muster, given that most of the inapposite case law and argument she asserts do not cure her claim's deficiencies. Plaintiff also cannot sufficiently plead the elements of loss causation because neither the Hindenburg Report nor the April 18, 2022 press release were corrective disclosures. Because Plaintiff cannot plead a primary violation of the federal securities laws, her Section 20(a) claim also fails. Finally, Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice, and without further leave to amend.

Dated: February 13, 2023

**KING & SPALDING LLP**

By: */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
BRIAN P. MILLER
SAMANTHA J. KAVANAUGH
ROSS E. LINZER

Attorneys for Defendants MULLEN AUTOMOTIVE, INC., MULLEN TECHS., INC., and DAVID MICHERY