Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff Mejgan Mirbaz*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION | Case No. 2:22-cv-03026-DMG-AGR<br><br>Honorable Dolly M. Gee<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: September 13, 2024<br>Time:           9:30 a.m.<br>Location:      350 West 1st Street<br>Courtroom:   8C |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...........................................................................1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ...............1

    A.    Nature of the Action.................................................................................1

    B.    Initial Complaints and Lead Appointment Process ..............................2

    C.    Lead Counsel's Investigation and the Amended Complaint ..................2

    D.    The Court Denies in Part the Motion to Dismiss the Amended Complaint ................................................................................................3

    E.    Discovery .................................................................................................3

    F.    Mediation Efforts and Settlement Negotiations.....................................4

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ..........................................................................................................5

IV.  ARGUMENT ..........................................................................................................6

    A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors....................6

        1.    Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class..................................................................6

        2.    The Settlement Is the Result of Arm's-Length Negotiations ..................................................................................7

        3.    The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation........................................................8

        4.    Rule 23(e)(2)(C)(ii)-(iv) ............................................................12

        5.    The Settlement Treats All Class Members Equitably Relative To Each Other ...............................................................14

        6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval...............................................15

    B.    Class Certification is Appropriate for Settlement Purposes .................18

1. The Settlement Class is Sufficiently Numerous ..........................20

2. Common Questions of Law or Fact Exist ..................................20

3. Lead Plaintiff's Claims Are Typical of Those of the Settlement Class...........................................................................21

4. Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class...........................................................................21

5. The Predominance and Superiority Requirements Are Satisfied ..................................................................................22

6. The Court Should Appoint GPM Class Counsel.........................22

C. The Court Should Approve the Proposed Form and Method of Notice ...................................................................................................23

V. PROPOSED SCHEDULE OF EVENTS ..........................................................24

VI. CONCLUSION ...............................................................................................25

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................19, 22

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .....................................................................10

*Barani v. Wells Fargo Bank, N.A.*,
    2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ................................................24

*Barnes v. AT&T Pension Benefit Plan*,
    270 F.R.D. 488 (N.D. Cal. 2010) .................................................................20

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
    2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ...............................................12

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ........................................................................20

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..........................................10, 13

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................................................18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................9

*Gudimetla v. Ambow Educ. Holding*,
    2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ...........................................17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ........................................................................20

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................................................15

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................24

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ........................................................................21

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................9

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)........................................................................20

*In re Critical Path, Inc.*,
2002 WL 32627559 (N.D. Cal. June 18, 2002)........................................................................12

*In re Diamond Foods, Inc.*,
295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................21

*In re Diamond Foods, Inc., Securities Litigation*,
2014 WL 106826 (N.D. Cal. Jan. 10, 2014)........................................................................11

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................................11

*In re Mullen Auto. Sec. Litig.*,
2023 WL 8125447 (C.D. Cal. Sept. 28, 2023) ........................................................................3

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008)........................................................................10

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........................................................................13

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................................15, 16, 18, 21

*Ivan Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ...................................................12, 15

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ..........................................................19

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................13, 22

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017).....................................................................9

*Lusk v. Five Guys Enterprises LLC*,
2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) .......................................................8

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................................................7, 21

*Officers for Justice v. Civ. Serv. Comm.*,
688 F.2d 615 (N.D. Cal. 1982) ..............................................................................17

*Persky v. Turley*,
1991 WL 329564 (D. Ariz. Dec. 20, 1991)............................................................22

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................................8

*Schaub v. Mullen Automotive, Inc.*,
2022 WL 18277984 (C.D. Cal. Aug. 4, 2022) ........................................................2

*Siemer v. Assocs. First Capital Corp.*,
2001 WL 35948712 (D. Ariz. March 30, 2001)......................................................20

*Smith v. Dominion Bridge Corp.*,
2007 WL 1101272 (E.D. Pa. Apr. 11, 2007)...........................................................10

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................................18

*Sudunagunta v. NantKwest, Inc.*,
  2019 WL 2183451 (C.D. Cal. May 13, 2019)..........................................................8

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014).........................................................14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...............................................................................19

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) .....................................................6, 8

STATUTES

15 U.S.C. § 78u-4(a)(7) ............................................................................................24

15 U.S.C. §§ 78j(b) and 78t(a) ...................................................................................1

RULES

Fed. R. Civ. P. 23....................................................................................*passim*

REGULATIONS

17 C.F.R. § 240.10b-5 .................................................................................................1

# I.    PRELIMINARY STATEMENT

The Parties[1] have reached a proposed Settlement of the above-captioned action (the "Action") that resolves all claims against Defendants in exchange for an all cash, non-reversionary payment of $7,250,000. Court-appointed lead plaintiff Mejgan Mirbaz ("Lead Plaintiff") respectfully submits that the Settlement represents an extremely favorable result for the Settlement Class, especially given the substantial risks, costs, and delays of continued litigation, and that it was secured in a procedurally fair manner. Moreover, securities class actions are routinely certified for the purpose of settlement. Preliminary approval is, therefore, proper under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

# II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

## A.    Nature of the Action

Lead Plaintiff asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Mullen Auto, Mullen Tech (together, "Mullen") and their CEO David Michery (collectively, "Defendants").

Lead Plaintiff alleges that between June 15, 2020 and April 17, 2022, inclusive (the "Settlement Class Period"), Defendants materially misled investors regarding Mullen's electric vehicle business with respect to its customer orders, battery testing, manufacturing facilities, and commercial partnerships. Defendants deny these allegations, and the Settlement, as proposed, is entered into by Defendants without any admission of wrongdoing.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated August 14, 2024 (the "Stipulation"), or the concurrently filed Declaration of Garth Spencer (the "Spencer Declaration"). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Spencer Declaration, unless otherwise specified. The Stipulation and its exhibits are attached as Exhibit 1 to the Spencer Declaration.

**B.     Initial Complaints and Lead Appointment Process**

On May 5, 2022 and May 12, 2022, respectively, class action complaints were filed in the United States District Court for the Central District of California (the "Court"), styled *Schaub v. Mullen Automotive, Inc.*, Case No. 22-cv-3026-DMG (AGRx), and *Gru v. Mullen Automotive, Inc.*, Case No. 22-cv-976-DMG (AGRx). By order dated August 4, 2022, the Court consolidated and recaptioned the cases as *In re Mullen Automotive, Inc. Securities Litigation*, Case No. 22-cv-3026-DMG (AGRx); appointed Mejgan Mirbaz Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel for the proposed class. ECF No. 28; *Schaub v. Mullen Automotive, Inc.*, 2022 WL 18277984, at *2 (C.D. Cal. Aug. 4, 2022).

**C.     Lead Counsel's Investigation and the Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Mullen's and Net Element's[2] filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, and news articles concerning Mullen, and (c) court filings and other publicly available material related to Mullen; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Mullen employees and other sources of relevant information. ¶8. Lead Counsel also consulted with a damages and loss causation expert. *Id*. On September 23, 2022, Lead Plaintiff filed and served the Amended Complaint based on the foregoing investigation. ECF No. 42.

---

[2] During the Settlement Class Period, private company Mullen Tech completed a reverse merger with publicly traded Net Element, which created Mullen Auto as a publicly traded company.

### D. The Court Denies in Part the Motion to Dismiss the Amended Complaint

On November 22, 2022, Defendants filed a motion to dismiss the Amended Complaint. ECF Nos. 52-53. On January 13, 2023, Lead Plaintiff filed her papers in opposition to the motion to dismiss. ECF Nos. 56-58. On February 13, 2023, Defendants filed their reply papers. ECF No. 62. Lead Plaintiff and Defendants also filed requests for leave to file notices of recent decisions concerning the issue of standing, which were granted by the Court. ECF Nos. 59-60, 65-66. The Court took Defendants' motion to dismiss under submission, and on September 28, 2023 issued an order granting the motion to dismiss in part and denying in part. ECF No. 68; *In re Mullen Auto. Sec. Litig.*, 2023 WL 8125447, at *13 (C.D. Cal. Sept. 28, 2023).

### E. Discovery

On October 25, 2023, the Parties held their Rule 26(f) conference, and thereafter commenced discovery. ¶9. On October 25, 2023, Lead Plaintiff served on Defendants a first set of interrogatories and a first set of requests for production. ¶10. On November 8, 2023, the Parties served their initial disclosures on each other. *Id.* On November 10, 2022, Defendants served their first set of interrogatories and first set of requests for production on Lead Plaintiff. *Id.* On December 11, 2023, the Parties served their responses and objections to each other's first sets of interrogatories and requests for production. *Id.* On January 4, 2024, Lead Plaintiff served her second set of requests for production on Defendants. *Id.* Defendants served their responses and objections on February 5, 2024. *Id.*

The Parties had extensive correspondence and discussions concerning their discovery requests and objections. ¶11. The Parties also negotiated over date ranges, search terms, and custodians for Defendants' electronically stored information. *Id.* The Parties negotiated a Stipulation and Proposed Confidentiality Order, and a Stipulation and Proposed Order Regarding the Production of Discovery, which the Court entered, as modified, on December 29, 2023. ECF Nos. 78-79.

On December 11, 2023, Lead Plaintiff produced 60 documents to Defendants, totaling 78 pages. ¶12. On January 25, 2024, Lead Plaintiff produced an additional four documents to Defendants, totaling 4 pages. *Id*. Lead Plaintiff's productions included, among other things, brokerage account documents, records of transactions in Mullen stock, and her relevant social media posts. *Id*. Beginning on March 6, 2024, Defendants made rolling productions totaling approximately 2,923 documents, consisting of 15,232 pages, including emails and other business records. *Id*.

Beginning on October 25, 2023, and over the following months, Lead Plaintiff issued document subpoenas to 11 non-parties, including Mullen business partners and prospective customers, and a former Mullen officer. ¶13. Following the receipt of objections from certain subpoena recipients, and negotiations over the scope of document productions, Lead Plaintiff received from subpoena recipients approximately 2,146 documents, totaling 10,316 pages. *Id*. Lead Plaintiff promptly produced these documents to Defendants. *Id*. Pursuant to a subpoena, Lead Plaintiff also took the deposition of a non-party. *Id*. Lead Plaintiff was prepared to continue vigorously pressing discovery if the Parties' planned mediation was not successful. *Id*.

**F.   Mediation Efforts and Settlement Negotiations**

On February 23, 2024, the Court referred the case to private mediation, in accordance with the Parties' ADR procedure selection. ECF No. 81. On April 2, 2024, Lead Plaintiff, Lead Counsel and Defendants' Counsel participated in a full-day, in-person mediation session before Robert A. Meyer, Esq. of JAMS. ¶14. In advance of that session, the Parties exchanged, and provided to Mr. Meyer, detailed mediation statements and exhibits, which addressed issues including liability, damages, and class certification. *Id*. The mediation culminated in Mr. Meyer making a mediator's recommendation to resolve the Action for $7,250,000 in cash for the benefit of the Settlement Class, which the Parties accepted. *Id*.

After substantial further negotiations, the agreement in principle to settle the

Action was memorialized in a term sheet dated May 16, 2024 (the "Term Sheet"). ¶15. The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $7,250,000 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplates the execution of a customary "long form" stipulation and agreement of settlement and related papers. *Id*. The Stipulation was executed following substantial additional negotiations concerning the terms of the Settlement. *Id*.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:
- (i)    the costs, risks, and delay of trial and appeal;
- (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
- (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
- (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

These factors are not exclusive, nor intended to displace any factor previously adopted by the courts. *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919). The Ninth Circuit's traditional factors used to evaluate class

action settlements (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at \*6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").[4] As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.   Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and she

---

[3] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class, and there is no government participant.

[4] All emphasis herein is added and internal citations and quotations omitted.

has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at \*3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for herself and the Settlement Class, including by responding to discovery requests and even attending the mediation in-person. ¶32.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions in federal and state courts throughout the country. *See* Ex. 2 (GPM firm résumé). Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation of the claims through a detailed review of publicly available documents about Mullen, as well as contacting former Mullen employees, drafting the detailed Amended Complaint, fully briefing and defeating in part the motion to dismiss, conducting discovery of Defendants and non-parties, and obtaining a $7.25 million Settlement for the benefit of the Settlement Class through an adversarial mediation process. ¶¶8-14, 34; *see also PPG*, 2019 WL 3345714, at \*3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

**2.      The Settlement Is the Result of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was

negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[5] The Ninth Circuit, and courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, the Parties participated in a full-day mediation session with Mr. Meyer, which culminated in a mediator's proposal that the Action be settled for $7.25 million. ¶14. The arm's-length nature of the settlement negotiations and the involvement of a mediator with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See, e.g.*, *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq." and the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *see also Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

### 3. The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[6] As discussed below, these factors support the Settlement's approval.

---

[5] Rule 23(e)(2)(A)-(B) overlaps with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation and; the risks of maintaining class action status through the trial. *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

**The Strength of Lead Plaintiff's Case and Risk of Continued Litigation:** In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Here, the risks of continued litigation were considerable. While Lead Plaintiff partially survived Defendants' motion to dismiss, she still needed to ***prove*** her case. Lead Plaintiff would have to prove, *inter alia*, that the remaining challenged statements were materially false and misleading, that Defendants knew or were reckless in not knowing that their statements were misleading when made, and that those statements were corrected and caused recoverable damages for the Settlement Class. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Counsel anticipated Defendants would present strong arguments challenging Lead Plaintiff's proof on all of those elements at summary judgment and/or at trial. ¶19. For example, Defendants would likely argue that loss causation and damages could not be proven because Mullen's stock was volatile and its price movement following all but one of the alleged corrective disclosures was not statistically significant. *Id*. While Lead Counsel believe they had strong arguments to the contrary, proving loss causation and damages would have been complex, risky, and would have required expensive expert testimony. *Id*.; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Lead Counsel also anticipated Defendants would continue to argue that Lead Plaintiff failed to allege actionable misrepresentations under the federal securities laws, and that the remaining misstatements were made with scienter. ¶20. Scienter is often one of the most difficult elements to prove in a securities fraud case, requiring

plaintiffs to rely on circumstantial evidence concerning the state of mind of an adverse witness. *See, e.g.*, *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *5 (E.D. Pa. Apr. 11, 2007) ("Since stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs."); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do."), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Lead Counsel expects that Defendants would likely appeal the verdict and award. ¶21. The appeals process can take years to resolve, including direct appeal to the Ninth Circuit, potential reconsideration or *en banc* review, or even a writ of certiorari to the Supreme Court. During any potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[7]

**Risks of Maintaining Class Action Status:** While Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Part IV.B, *infra*, the class has not yet been certified, and there is a risk the Court could disagree. Even if the Court were to certify the class, there remains a risk that the class could be decertified later in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Lead Counsel expected

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

Defendants to argue, *inter alia*, that Lead Plaintiff could not demonstrate price impact based on a purported lack of statistically significant price movements in response to certain information, and that Mullen stock traded in an inefficient market, which would foreclose the fraud-on-the-market presumption of reliance. ¶22. While Lead Plaintiff would vigorously dispute any such arguments, the risks and uncertainty surrounding class certification support approval of the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

**Risks Concerning Collectability:** Even if Lead Plaintiff were to establish and maintain class certification, liability, and damages, through trial and appeals, there would still be substantial risk that she would not be able to collect on a judgment. The potentially available insurance policies were limited, wasting, and may have denied coverage if Defendants were found by a final judgment to have committed fraud. ¶23. Mullen's most recent publicly filed quarterly report lists only $3.5 million of unrestricted cash as of June 30, 2024, as compared to a net loss of $91.6 million for the second quarter of 2024. ¶24; Ex. 3. The report states that "[t]here is substantial doubt about the Company's ability to continue as a going concern because the cash on hand is insufficient to meet its working capital and capital expenditure requirements for a period of at least twelve months from the date of the filing of this Form 10-Q." *Id.* Although Mullen has announced receiving commitments for additional investments, there remains substantial uncertainty as to whether, years from now, Lead Plaintiff could collect ***any*** funds from Defendants, let alone an amount potentially greater than the $7.25 million Settlement. ¶25; *see also In re Diamond Foods, Inc., Securities Litigation*, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) ("It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about Diamond's strained financial state and its

ability to pay a judgment following further litigation.") (cleaned up); *In re Critical Path, Inc.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing ... watching Critical Path fall into bankruptcy; and, most certainly, drying up the available insurance.").

### 4. Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each of the Rule 23(e)(2)(C) factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. ¶38. Claims processing, like the method proposed here, is standard in securities class action settlements. ¶39. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8] *See Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (holding that "[t]he requirement that class members submit documentation to substantiate their holdings of the bonds as of the record date will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation."); *see also Ivan*

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶2.9.

*Baron v. HyreCar Inc. et al.*, 2024 WL 3504234, at \*9 (C.D. Cal. July 19, 2024) (finding nearly identical distribution process "effective" and granting preliminary approval).

**Rule 23(e)(2)(C)(iii):** As disclosed in the Postcard Notice and Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar cases. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund). Lead Counsel intends to submit a motion for attorneys' fees and Litigation Expenses (the "Fee and Expense Application") concurrently with their anticipated motion for final settlement approval, and will at that time identify the precise amounts of fees and expenses sought, and provide lodestar information concerning Lead Counsel's hours worked on the Action and billing rates. ¶42. Importantly, approval of the Fee and Expense Application is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to the Fee and Expense Application. *See* Stipulation ¶6.2.

**Rule 23(e)(2)(C)(iv):** The Parties have executed a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Mullen Auto Common Stock outstanding at the end of the Settlement Class Period request exclusion (or "opt out") from the Settlement. ¶16. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at \*1; *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019).

MOTION FOR PRELIMINARY APPROVAL

### 5.    The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. *See* Stipulation Exhibit A-1 (the "Notice") at ¶¶47-76. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* at ¶71. A Claimant's Recognized Claim is the sum of her Recognized Loss amounts with respect to all Mullen Securities. *Id.* at ¶59.[9]

The calculation of Recognized Loss amounts for Mullen Common Stock is based on the timing, price, and quantity of the Claimant's transactions, and reflects Lead Plaintiff's damages theory that artificial inflation was removed from the price of Mullen Common Stock in response to the alleged corrective disclosures.[10] *Id.* at ¶48-49, 55; ¶40. This methodology treats Settlement Class Members fairly and equitably based on their Settlement Class Period transactions in Mullen Securities, and similar plans of allocation are routinely approved in securities class action settlements. *See Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every

[9] "Mullen Securities" are defined in the Stipulation to mean the publicly traded common stock of Mullen Auto or Net Element, publicly traded call options on such stock, and publicly traded put options on such stock. Stipulation, ¶1.23.

[10] Mullen Call and Put Option trading accounted for less than 1% of total dollar trading volume for Mullen Securities during the Settlement Class Period. ¶41. Consequently, claims for Mullen Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation. *See* Stipulation, Ex. A-1 at ¶58, n.9. Recognized Loss Amounts are calculated for options based on factors including the timing, price, and quantity of the Claimant's transactions, and whether the position was held as of one of the alleged corrective disclosure dates. *See id.* at ¶¶56-57.

Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *Baron*, 2024 WL 3504234, at *10-11 (finding substantially similar plan of allocation treats class members equitably).

### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors. These factors also support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). The $7.25 million Settlement Amount is within the range of reasonableness under the circumstances so as to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved attorneys' fees and Litigation Expenses, will be approximately $0.03 per affected share of Mullen Common Stock. *See* Stipulation, Ex. A-1, at ¶3. The estimated average recovery if the Court approves Lead Counsel's Fee and Expense Application would be approximately $0.02 per affected share of Mullen Common Stock. *See id.* at ¶5.

The $7.25 million recovery represents 8.6% of Lead Counsel's estimate of $84.3 million in damages for the corrective disclosures reflected in the proposed Plan of Allocation. ¶26.[11] This estimate depends on a number of assumptions, including

---

[11] While, in addition to the corrective disclosure dates reflected in the Plan of Allocation (September 21, 2021; April 7, 2022; and April 18, 2022), the Amended Complaint alleged corrective disclosures on April 6, 2022 and April 19-20, 2022, Lead Counsel believes that proving loss causation and damages would be more difficult for those dates, and so they are not reflected in the Plan of Allocation and damages figures herein. ¶27; *see also In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, (footnote continued)

when and in what quantities certain shares of stock registered for public trading by Mullen toward the end of the Settlement Class Period first entered the public market. *Id.* While Lead Counsel believes the $84.3 million damages estimate to be based on the most reasonable assumptions, using different assumptions as to when the newly registered Mullen shares entered the market, and holding all else equal, resulted in a range of estimated damages calculated by Lead Counsel's expert from $35.2 million to $108.8 million (under which the $7.25 million Settlement would range from 20.6% to 6.7% of damages). *Id.*

Obtaining a judgment equal to the $84.3 million damages estimate would require, among other things, that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the trier of fact accepted Lead Plaintiff's loss causation and damages theory, including with respect to each of the corrective disclosure dates reflected in the Plan of Allocation. ¶28. This outcome was far from certain. *Id.* If Lead Plaintiff succeeded in obtaining, and **collecting** (*see supra* Part IV.A.3), a judgment equal to the estimated damages of approximately $84.3 million, then the estimated average recovery, before deducting Court-approved attorneys' fees and Litigation Expenses, would be approximately $0.34 per affected share of Mullen Common Stock, and the estimated average recovery if the Court approves Lead Counsel's post-trial fee and expense application (for 33⅓% of the hypothetical $84.3 million judgment) would be approximately $0.23 per affected share of Mullen Common Stock. ¶31.

The $7.25 million recovery, equal to 8.6% of estimated damages, is more than double the typical percentage recovery for damages of a similar size. *See, e.g.*, Ex. 4

at *12 (N.D. Cal. Oct. 27, 2015) ("Courts in this District and elsewhere endorse distribution of settlement proceeds according to the relative strengths and weaknesses of the various claims.").

(excerpt from Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review (NERA Jan. 23, 2024)), at p. 25 (Fig. 21) (median recovery was 3.8% for securities class actions with estimated damages of $50-$99 million settled during January 2014-December 2023). Of course, less than a complete victory on any aspect of Lead Counsel's theories would decrease recoverable damages, and Lead Counsel expects that Defendants would have strongly contested loss causation. ¶19. In the light of the substantial risks of continued litigation detailed above (including collectability issues), the percentage recovery here is reasonable. Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982); *see also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement where $1.5 million recovery was 5.6% of $26.7 million in estimated damages where there were very serious ability to pay and collectability issues).

**The Stage of the Proceedings and Extent of Discovery Completed:** Lead Plaintiff had completed significant discovery, including review and analysis of over 5,000 documents (totaling over 25,000 pages) produced in response to her requests for production to Defendants and subpoenas to non-parties, and taking the deposition of a non-party. ¶13. Lead Plaintiff was prepared to continue vigorously pressing discovery if a favorable Settlement could not be reached. *Id*. In addition, Lead Plaintiff conducted an extensive investigation, which included consulting with a loss causation and damages expert, contacting former Mullen employees and analyzing numerous publicly available documents. Moreover, Lead Plaintiff engaged in substantial briefing on Defendants' motion to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator. ¶14. Thus, at the time of settlement, Lead Plaintiff and her Counsel had a thorough understanding of the strengths and weaknesses of this Action.

¶¶18, 34; *see also In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.").

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). This is because "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *13 (N.D. Cal. Feb. 11, 2016) (cleaned up).

Here, Lead Counsel has extensive experience in class action securities litigation and has a thorough understanding of the merits and risks of the Action. ¶34. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Defendants have been vigorously represented by experienced litigators from King & Spalding LLP, throughout the Action and settlement negotiations. ¶17. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, this factor supports preliminary approval. *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *13 (N.D. Cal. Feb. 11, 2016) (finding "Lead Counsel's endorsement weighs in favor of approving the Settlement" where "Lead Counsel and counsel for Defendants have substantial experience in securities class actions and other complex class action litigation.").

For all the forgoing reasons, the Court should preliminarily approve the Settlement.

**B.      Class Certification is Appropriate for Settlement Purposes**

At the Settlement Hearing, Lead Plaintiff will ask the Court to grant final approval to the Settlement on behalf of the Settlement Class. Thus, the Court should consider, at the preliminary approval stage and solely for purpose of the Settlement,

whether the certification of the Settlement Class appears to be appropriate. *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id.* Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of "[a]ll Persons that purchased or otherwise acquired the publicly traded common stock of Mullen Automotive Inc. or Net Element Inc., and/or purchased or otherwise acquired publicly traded call options on such stock, and/or wrote publicly traded put options on such stock, during the Settlement Class Period, and who suffered economic losses as a proximate result of the alleged wrongdoing." Stipulation, ¶1.44.[12] As detailed below, this Action satisfies all the factors for certification of a Settlement Class.[13] The Ninth Circuit and

---

[12] Excluded from the Settlement Class are:(a) Persons who suffered no compensable losses; and (b)(i) Defendants, Net Element, and the Excluded Entities; (ii) present and former parents, subsidiaries, assigns, successors, predecessors and affiliates of Mullen Auto, Mullen Tech, Net Element, and the Excluded Entities; (iii) any Person who served as an Officer and/or director of Mullen Auto, Mullen Tech, Net Element, or the Excluded Entities during the Settlement Class Period and their Immediate Family Members; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which Michery is the settler or which is for the benefit of Michery and/or his Immediate Family Members; (vi) Defendants' and Net Element's D&O Insurers; and (vii) the legal representatives, heirs, successors, and assigns of any Person excluded under provisions (i) through (vi) hereof. Stipulation, ¶1.44.

[13] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,
(footnote continued)

numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud cases. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[14]

### 1.   The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impractical to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were at least hundreds of purchasers of Mullen Securities during the Settlement Class Period. ¶33. This more than suffices to establish numerosity. *See Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

### 2.   Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, commonality requires only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001). This factor is "construed permissively, and [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

---

593 (1997).

[14] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.").

disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, Lead Plaintiff's claims that Defendants violated the federal securities laws by misrepresenting material facts about Mullen's business in publicly disseminated statements during the Settlement Class Period unquestionably raise issues of common interest to the Settlement Class. *See Zynga*, 2015 WL 6471171, at *6.

### 3. Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Lead Plaintiff alleges that she purchased Mullen Securities during the Settlement Class Period and was subsequently damaged due to Defendants' conduct. Similarly, the interest of Lead Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the other Settlement Class Members. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Part IV.A.1, *supra*, Lead Plaintiff and Lead Counsel are adequate representatives. *See also PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the

interests of the rest of the Settlement Class members."); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits.").

### 5.    The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, common questions predominate—for example, whether Defendants' statements were misleading, and whether Defendants acted with scienter. Such questions predominate over individual issues such as the computation of Settlement Class Members' losses, which will be efficiently handled through the claims administration process. *See Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991) (finding that common issues relating to defendants' alleged misrepresentations predominate even though "[i]n securities claims it is common for the representative's personal claims to differ from the claims of the other class members in such matters as dates of purchase and sale, size of transaction, sophistication of investors and degree of reliance"). A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because damages suffered by most Settlement Class Members would not be sufficient to make it economical to prosecute separate actions. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").

### 6.    The Court Should Appoint GPM Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in

identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in August 2022 (ECF No. 28), and since that time the firm has devoted hundreds of hours and substantial resources to identifying, investigating, litigating and settling the claims in this matter. ¶34. Moreover, as explained in Part IV.A.1, *supra*, GPM has substantial experience prosecuting securities class actions. *Id*. Therefore, Lead Plaintiff respectfully requests that the Court appoint GPM to serve as Class Counsel.

**C.    The Court Should Approve the Proposed Form and Method of Notice**

Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data**,** an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. ¶35. A.B. Data was selected after a competitive bidding process, and has reliably administered other securities class actions for Lead Counsel. *Id*.

The Claims Administrator will mail copies of the Postcard Notice (Stipulation Exhibit A-4), and/or email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort. ¶36. The Claims Administrator will also provide notice of the Settlement to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, informing such firms of the methods by which notice may be provided to their clients. *Id*. Copies of the Notice and the Claim Form (Stipulation Exhibits A-1 and A-2) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form, and other important documents, can be downloaded, and where claims can be submitted online. *Id*. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after

mailing the Postcard Notice, the Summary Notice (Stipulation Exhibit A-3) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*. *Id.*

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed postcard directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at \*10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice).

Lead Plaintiff respectfully submits that the Court should also approve the form and content of the proposed Notice, Summary Notice, and Postcard Notice. *See* Stipulation, Exhibits A-1, A-3, and A-4. The Notice is written in plain language and clearly sets out information including the nature of the Action, the definition of the Settlement Class, and the binding effect of a class judgment on Settlement Class Members. *See* Stipulation Exhibit A-1 at ¶¶11-22, 29. The Notice also satisfies the disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also discloses the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or Fee and Expense Application. *See* Stipulation Exhibit A-1 at ¶¶78-88.

## V.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. Lead Plaintiff requests that Court schedule the Settlement Hearing at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's Fee and Expense Application (Prelim. Appr. Order ¶22) | Not later than 42 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests (Prelim. Appr. Order ¶13) | Not later than 30 calendar days prior to the Settlement Hearing |
| Deadline for filing of objections (Prelim. Appr. Order ¶14) | Not later than 28 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶22) | 14 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 100 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement and enter the proposed Preliminary Approval Order. As this motion is unopposed, Lead Plaintiff also respectfully requests that the Court consider this motion for preliminary approval on the papers.

Dated: August 16, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Garth Spencer*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff*
*Mejgan Mirbaz*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiff Mejgan Mirbaz, certifies that this brief contains 8,217 words, which complies with the 8,400 word limit set by order of the Court (*see* ECF No. 85).

DATED: August 16, 2024          *s/ Garth Spencer*
                               Garth Spencer

## **PROOF OF SERVICE**

I hereby certify that on this 16th day of August, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Garth Spencer*
Garth Spencer
