Robert V. Prongay (SBN 270796)
 *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
 *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
 *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Lead Counsel for Lead Plaintiff Mejgan Mirbaz*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION | Case No. 2:22-cv-03026-DMG-AGR<br><br>Honorable Dolly M. Gee<br><br>**DECLARATION OF GARTH SPENCER IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: September 13, 2024<br>Time:　　　 9:30 a.m.<br>Location:　 350 West 1st Street<br>Courtroom:　 8C |

# TABLE OF CONTENTS

I.      EXHIBITS ....................................................................................................... 1

II.     PROCEDURAL HISTORY ............................................................................ 1

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........... 4

        A.      Lead Counsel's Analysis Of The Risks Of Continued Litigation .......... 4

        B.      The Settlement Amount is Reasonable in Light of Estimated
                Damages ................................................................................................. 6

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................. 8

V.      NOTICE PROGRAM AND PLAN OF ALLOCATION ................................ 8

        A.      The Notice Program ............................................................................... 8

        B.      Plan of Allocation of the Net Proceeds of the Settlement ...................... 9

VI.     LEAD PLAINTIFF'S ANTICIPATED MOTIONS FOR FINAL
        APPROVAL AND FOR ATTORNEYS' FEES AND EXPENSES .............. 10

VII.    CONCLUSION .............................................................................................. 11

I, Garth Spencer, hereby declare and state as follows:

1.    I am an attorney duly licensed to practice law before all of the courts of the State of California and am admitted to practice in the Central District of California. I am a partner with the law firm of Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), counsel of record for lead plaintiff Mejgan Mirbaz ("Lead Plaintiff") in the above-entitled Action.[1] I submit this Declaration in support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify to thereto.

## I.    EXHIBITS

2.    Attached as Exhibit 1 is a true and correct copy of the Stipulation.

3.    Attached as Exhibit 2 is a true and correct copy of GPM's firm résumé.

4.    Attached as Exhibit 3 is a true and correct copy of excerpts of Mullen Automotive Inc.'s Form 10-Q for the Quarter Ended June 30, 2024, as filed with the SEC's EDGAR database on August 12, 2024.

5.    Attached as Exhibit 4 is a true and correct copy of excerpts from Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review (NERA Jan. 23, 2024).

## II.    PROCEDURAL HISTORY

6.    This Action concerns allegedly false and misleading statements made by Defendants Mullen Automotive Inc. ("Mullen Auto"), Mullen Technologies Inc. ("Mullen Tech," and together with Mullen Auto, "Mullen") and their CEO David Michery (collectively, "Defendants," and together with Lead Plaintiff, the "Parties") about Mullen's electric vehicle business, between June 15, 2020 and April 17, 2022,

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated August 14, 2024 (the "Stipulation"). A true and correct copy of the Stipulation is attached hereto as Exhibit 1.

inclusive (the "Settlement Class Period"). During the Settlement Class Period, private company Mullen Tech completed a reverse merger with publicly traded Net Element Inc. ("Net Element"), which created Mullen Auto as a publicly traded company.

7. By order dated August 4, 2022, the Court appointed Mejgan Mirbaz as lead plaintiff for this Action, and approved her selection of GPM as lead counsel for the putative class. ECF No. 28.

8. Following Lead Counsel's appointment, GPM conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (a) reviewing and analyzing (i) Mullen's and Net Element's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) public reports, press releases, and news articles concerning Mullen, and (iii) court filings and other publicly available material related to Mullen; and (b) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Mullen employees and other sources of relevant information. Lead Counsel also consulted with a damages and loss causation expert. On September 23, 2022, Lead Plaintiff filed and served the Amended Complaint based on the foregoing investigation. ECF No. 42.

9. Discovery in the Action was initially stayed pending the outcome of Defendants' motion to dismiss, pursuant to the Private Securities Litigation Reform Act of 1995. *See* 15 U.S.C. § 78u–4(b)(3)(B). On September 28, 2023, the Court issued an order granting in part and denying in part Defendants' motion to dismiss. ECF No. 68; *In re Mullen Auto. Sec. Litig.*, 2023 WL 8125447 (C.D. Cal. Sept. 28, 2023). On October 25, 2023, the Parties held their Rule 26(f) conference, and thereafter commenced discovery.

10. On October 25, 2023, Lead Plaintiff served on Defendants a first set of interrogatories and a first set of requests for production. On November 8, 2023, the Parties served their initial disclosures on each other. On November 10, 2022, Defendants served their first set of interrogatories and first set of requests for

production on Lead Plaintiff. On December 11, 2023, the Parties served their responses and objections to each other's first sets of interrogatories and requests for production. On January 4, 2024, Lead Plaintiff served her second set of requests for production on Defendants. Defendants served their responses and objections on February 5, 2024.

11.    The Parties had extensive correspondence and discussions concerning their discovery requests and objections. The Parties also negotiated over date ranges, search terms, and custodians for Defendants' electronically stored information. The Parties negotiated a Stipulation and Proposed Confidentiality Order, and a Stipulation and Proposed Order Regarding the Production of Discovery, which the Court entered, as modified, on December 29, 2023. ECF Nos. 78-79.

12.    On December 11, 2023, Lead Plaintiff produced 60 documents to Defendants, totaling 78 pages. On January 25, 2024, Lead Plaintiff produced an additional four documents to Defendants, totaling four pages. Lead Plaintiff's productions included, among other things, brokerage account documents, records of transactions in Mullen stock, and her relevant social media posts. Beginning on March 6, 2024, Defendants made rolling productions totaling approximately 2,923 documents, consisting of 15,232 pages, including emails and other business records.

13.    Beginning on October 25, 2023, and over the following months, Lead Plaintiff issued subpoenas *duces tecum* to 11 non-parties, including Mullen business partners and prospective customers, and a former Mullen officer. Following the receipt of objections from certain subpoena recipients, and negotiations over the scope of document productions, Lead Plaintiff received from subpoena recipients approximately 2,146 documents, totaling 10,316 pages. Lead Plaintiff promptly produced these documents to Defendants. Pursuant to a subpoena, Lead Plaintiff also took the deposition of a non-party. Lead Plaintiff was prepared to continue vigorously pressing discovery if the Parties' planned mediation was not successful.

DECLARATION OF GARTH SPENCER I/S/O PRELIMINARY APPROVAL

14.     On April 2, 2024, Lead Plaintiff, Lead Counsel and Defendants' Counsel participated in a full-day, in-person mediation session before Robert A. Meyer, Esq. of JAMS. In advance of that session, the Parties exchanged, and provided to Mr. Meyer, detailed mediation statements and exhibits, which addressed issues including liability, damages, and class certification. The mediation culminated in Mr. Meyer making a mediator's recommendation to resolve the Action for $7,250,000 in cash for the benefit of the Settlement Class, which the Parties accepted.

15.     After substantial further negotiations, the agreement in principle to settle the Action was memorialized in a term sheet dated May 16, 2024 (the "Term Sheet"). The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $7,250,000 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplates the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation was executed following extensive negotiations concerning the terms of the Settlement.

16.     The Parties have also executed a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Mullen Auto Common Stock outstanding at the end of the Settlement Class Period request exclusion (or "opt out") from the Settlement.

17.     Defendants have been vigorously represented throughout the Action and settlement negotiations by experienced litigators from King & Spalding LLP.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Lead Counsel's Analysis Of The Risks Of Continued Litigation

18.     Through their investigation and prosecution of this Action, Lead Plaintiff and Lead Counsel have developed a thorough understanding of the Action's strengths and risks.

19.     Lead Counsel anticipates Defendants would present strong arguments challenging Lead Plaintiff's proof in their expected motion(s) for summary judgment and/or at trial. For example, Lead Counsel expects that Defendants would argue that loss causation and damages could not be proven because Mullen's stock was volatile and its price movement following all but one of the alleged corrective disclosures was not statistically significant. While Lead Counsel believe they have strong arguments to the contrary, arguing loss causation and damages would have been complex and risky, and would have required expensive expert testimony.

20.     Lead Counsel also expects that Defendants would continue to argue, as they did in the motion to dismiss, that Lead Plaintiff failed to allege actionable misrepresentations under the federal securities laws. Lead Counsel likewise expects that Defendants would have continued to dispute that any of the remaining misstatements were made with scienter.

21.     Even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Lead Counsel expects that Defendants would likely appeal the verdict and award.

22.     Lead Counsel expects that Defendants would argue that individual issues predominate over class-wide issues, on the grounds that the volatility of Mullen's stock and its lack of statistically significant price movements in response to certain information supposedly means that the fraud-on-the-market theory and its presumption of reliance do not apply. While Lead Plaintiff would vigorously dispute any such argument, Lead Counsel expects that Defendants would have challenged class certification on this and other bases if the case reached that stage.

23.     The insurance policies potentially available to contribute to a judgment or settlement in this Action were limited, wasting, and may have denied coverage if Defendants were found by a final judgment to have committed fraud.

24.     Mullen's most recent publicly filed quarterly report lists only $3.5 million of unrestricted cash as of June 30, 2024, as compared to a net loss of $91.6

DECLARATION OF GARTH SPENCER I/S/O PRELIMINARY APPROVAL

million for the second quarter of 2024. *See* Ex. 3. The report states that "[t]here is substantial doubt about the Company's ability to continue as a going concern because the cash on hand is insufficient to meet its working capital and capital expenditure requirements for a period of at least twelve months from the date of the filing of this Form 10-Q." *Id.*

25.     On May 14, 2024 Mullen issued a press release stating that it "has received a $100 million financing commitment from a family office and has sold up to an additional $50 million of senior secured convertible notes," and that "[t]hese commitments satisfy the Company's capital needs over the next 13 months." Despite such additional investments and commitments, there remains substantial uncertainty as to whether, years from now, Lead Plaintiff could collect any funds from Defendants, let alone an amount potentially greater than the $7.25 million Settlement.

**B.     The Settlement Amount is Reasonable in Light of Estimated Damages**

26.     The $7.25 million recovery represents 8.6% of Lead Counsel's estimate of $84.3 million in damages for the corrective disclosures reflected in the proposed Plan of Allocation. This estimate depends on a number of assumptions, including when and in what quantities certain shares of stock registered for public trading by Mullen toward the end of the Settlement Class Period first entered the public market. While Lead Counsel believes the $84.3 million damages estimate to be based on the most reasonable assumptions, using different assumptions as to when the newly registered Mullen shares entered the market, and holding all else equal, resulted in a range of estimated damages calculated by Lead Counsel's expert from $35.2 million to $108.8 million (under which the $7.25 million Settlement would range from 20.6% to 6.7% of damages).

27.     While, in addition to the corrective disclosure dates reflected in the Plan of Allocation (September 21, 2021; April 7, 2022; and April 18, 2022), the Amended Complaint alleged price declines on April 6, 2022 and April 19-20, 2022, Lead

DECLARATION OF GARTH SPENCER I/S/O PRELIMINARY APPROVAL

Counsel believes that proving loss causation and damages would be more difficult for those dates, and so they are not reflected in the Plan of Allocation and damages figures herein.

28.     For Lead Plaintiff to obtain a judgment equal to Lead Counsel's $84.3 million damages estimate would require, among other things, that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the trier of fact accepted Lead Plaintiff's loss causation and damages theory, including with respect to each of the corrective disclosure dates reflected in the Plan of Allocation. This outcome was far from certain.

29.     Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses, will be approximately $0.03 per affected share of Mullen Common Stock. *See* Stipulation Exhibit A-1 (the "Notice"), at ¶3.

30.     Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund.  In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $136,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to her representation of the Settlement Class, in an amount not to exceed $25,000. The estimated average cost per affected share of Mullen Common Stock, if the Court approves Lead Counsel's Fee and Expense Application, is $0.01. *See id.* at ¶5.

31.     If Lead Plaintiff succeeded in obtaining, and collecting a judgment equal to the estimated damages of approximately $84.3 million, then the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, would be approximately $0.34 per affected share of Mullen

Common Stock. This would require Lead Counsel to prevail during summary judgment, class certification, trial, and appeals, and therefore to incur substantial additional time and expenses. In such a scenario, Lead Counsel would likely seek fees equal to 33⅓% of the hypothetical $84.3 million judgment, and hundreds of thousands or millions of dollars in additional expenses. If the Court were to grant such a post-trial fee and expense application, the estimated average recovery would be approximately $0.23 per affected share of Mullen Common Stock.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

32.    Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for herself and the Settlement Class.  Among other things, she responded to discovery requests and even attended the mediation in-person.

33.    Lead Counsel estimates that there were at least hundreds of purchasers of Mullen Securities during the Settlement Class Period. Lead Counsel's damages expert calculates total reported trading volume during the Settlement Class Period at approximately 7.6 billion shares of Mullen or Net Element stock.

34.    Lead Counsel has extensive experience in class action securities litigation. *See* Exhibit 2 (GPM firm résumé). Lead Counsel has devoted hundreds of hours and substantial resources to identifying, investigating, litigating and settling the claims in this matter. Lead Counsel has, therefore, gained a thorough understanding of the merits and risks of the Action.

## V.    NOTICE PROGRAM AND PLAN OF ALLOCATION

### A.    The Notice Program

35.    Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, Ltd. ("A.B. Data" or the "Claims Administrator"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. A.B. Data was selected, subject to Court

approval, after a competitive bidding process, and has reliably administered other securities class actions for Lead Counsel.

36.    The Claims Administrator will mail copies of the Postcard Notice (Exhibit A-4 to the Stipulation), and/or email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort. The Claims Administrator will also provide notice of the Settlement to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, informing such firms of the methods by which notice may be provided to their clients. Copies of the Notice and the Claim Form (Stipulation Exhibits A-1 and A-2) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form, and other important documents, can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

37.    A.B. Data estimates, based on certain assumptions (*i.e.*, 150,000 Postcard Notices mailed, 37,500 claims filed, and 22,500 payments) and not including nominee reimbursements, that Notice and Administration Costs will total $235,000 to $255,000.

**B.    Plan of Allocation of the Net Proceeds of the Settlement**

38.    The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to A.B. Data. A.B. Data will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

DECLARATION OF GARTH SPENCER I/S/O PRELIMINARY APPROVAL

39.    In Lead Counsel's experience, claims processing, like the method proposed here, is standard in securities class action settlements, and has been long found to be effective, as well as necessary. Neither Lead Plaintiff, nor to the best of my knowledge, Defendants, possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

40.    Under the proposed Plan of Allocation, the calculation of Recognized Loss amounts for Mullen Common Stock is based on the timing, price, and quantity of the Claimant's transactions, and reflects Lead Plaintiff's damages theory that artificial inflation was removed from the price of Mullen Common Stock in response to the alleged corrective disclosures. *See* Notice at ¶¶48-50. This methodology treats Settlement Class Members fairly and equitably based on their Settlement Class Period transactions in Mullen Securities, and, in Lead Counsel's experience, similar plans of allocation are routinely approved in securities class action settlements.

41.    According to the expert consulted by Lead Counsel in connection with formulating the Plan of Allocation, Mullen Call and Put Option trading accounted for less than 1.0% of total dollar trading volume for Mullen Securities during the Settlement Class Period. Consequently, claims for Mullen Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation. *See id.* at ¶58, n.9. Recognized Loss amounts are calculated for options based on factors including the timing, price, and quantity of the Claimant's transactions, and whether the position was held as of one of the alleged corrective disclosure dates. *See id.* at ¶¶48-50.

**VI.    LEAD PLAINTIFF'S ANTICIPATED MOTIONS FOR FINAL APPROVAL AND FOR ATTORNEYS' FEES AND EXPENSES**

42.    As disclosed in the Notice and Postcard Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% of the Settlement Fund to compensate them for the services rendered on behalf of the Settlement Class. Lead Counsel intends to submit a motion for fees and

expenses concurrently with their anticipated motion for final settlement approval, and will at that time identify the precise amounts of fees and expenses sought, and provide lodestar information concerning Lead Counsel's hours worked on the Action and billing rates.

## VII.   CONCLUSION

43.     Lead Counsel respectfully submit that, based on their experience in prosecuting complex securities class actions such as this case, their understanding of the facts of this Action, the procedural posture of this Action, and the significant risks of continued litigation against Defendants, the Settlement represents a favorable result for the Settlement Class, is fair, reasonable, and adequate, and should be preliminarily approved by the Court. Lead Counsel believes that the Settlement, which provides for a substantial and certain recovery to the Settlement Class, is far more beneficial than continued litigation towards an uncertain outcome, which may yield a substantially lesser – or no – financial recovery.

44.     For the foregoing reasons, Lead Counsel respectfully requests that the Court enter the proposed Preliminary Approval Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this, the 16th day of August, 2024, at Wilmington, North Carolina.

*s/ Garth Spencer*
Garth Spencer

**PROOF OF SERVICE**

I hereby certify that on this 16th day of August, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_s/ Garth Spencer_
Garth Spencer

DECLARATION OF GARTH SPENCER I/S/O PRELIMINARY APPROVAL