Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
Garth Spencer (SBN 335424)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com
Email: gspencer@glancylaw.com

*Counsel for Lead Plaintiff Mejgan Mirbaz
and the Settlement Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION | Case No. 2:22-cv-03026-DMG-AGR<br><br>Honorable Dolly M. Gee<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing Date: June 20, 2025<br>Hearing Time: 10:00 a.m.<br>Location:    350 West 1st Street<br>Courtroom:  8C |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ..........3

III.  THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE
      REQUEST ...........................................................................................................3

      A.    Lead Counsel Is Entitled To A Common Fund Fee Award....................3

      B.    The Requested Attorneys' Fee Is Supported By The Factors
            Considered By Courts In The Ninth Circuit ...........................................4

            1.    The Quality Of The Result Supports The Fee Request ...............5

            2.    The Substantial Litigation Risks Support The Fee Request.........8

            3.    The Skill Required And The Quality Of The Work ..................11

            4.    The Contingent Nature Of The Fee And The Financial
                  Burden Carried By Counsel Support The Fee Request..............12

            5.    A 30% Fee Award Is Consistent With Fee Awards In
                  Similar, Complex, Contingent Litigation .................................14

            6.    The Reaction Of The Settlement Class Supports The
                  Requested Fee..........................................................................15

      C.    A Lodestar Cross-Check Supports The Requested Fee ........................16

IV.   LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED ................18

V.    THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA
      AWARD REQUEST ..........................................................................................20

VI.   CONCLUSION .................................................................................................21

# **TABLE OF AUTHORITIES**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................................1

*Ali v. Franklin Wireless Corp.*,
    2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ........................................................8

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ...................................................................................7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................................................6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)..........................................................3

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...............................................................................................3

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................18

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................................9

*Destefano v. Zynga*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016)........................................................12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...............................................................................................7

*Ellison v. Steven Madden, Ltd.*,
    2013 WL 12124432 (C.D. Cal. May 7, 2013).........................................................4

*Fernandez v. Victoria Secret Stores, LLC*,
    2008 WL 8150856 (C.D. Cal. 2008) ....................................................................16

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ...................................................................17

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ......................................................4, 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...................................................................13

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) .........................................................................8

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
   594 U.S. 113 (2021).....................................................................................6

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) .................................................................16

*Gross v. GFI Group, Inc.*,
   310 F. Supp. 3d 384 (S.D.N.Y. 2018) .....................................................12

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .......................................................................19

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..........................................9

*In re Am. Apparel Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) ........................................14

*In re American Intern. Group, Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) .......................................................................7

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................................6

*In re Apollo Grp. Inc. Sec. Litig.*,
   2012 WL 1378677 (D. Ariz. 2012) ..........................................................17

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991)...........................................................2

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2008 WL 63269 (E.D. Pa. Jan. 3, 2008)................................................................10

*In re Banc of California Sec. Litig.*,
   2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ......................................................15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).........................................................2

*In re Bluetooth Headsets Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................5

*In re Cendant Corp. Litig*,
   264 F.3d 201 (3d Cir. 2001) .................................................................................7

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005).......................................................5

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)..................................11, 12, 15, 16

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................17, 19, 20

*In re NASDAQ Market-Makers Antitrust. Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)...................................................................8, 14

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................................15

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................................*passim*

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..........................................................................11, 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ......................................................................10

*In re Safety-Kleen Corp. Bondholders Litig.*,
2004 WL 3115870 (D.S.C. Nov. 1, 2004)...............................................................7

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. April 23, 2024)..............................................*passim*

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .........................................................................12, 14

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)........................................................10, 13, 20

*In re XL Fleet Corp. Sec. Litig.*,
2024 WL 1884483 (S.D.N.Y. April 30, 2024)....................................................20

*In re: CCIV / Lucid Motors Sec. Litig.*,
110 F.4th 1181 (9th Cir. 2024) .............................................................................8

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022) ....................................................8, 15

*Lea v. TAL Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ....................................................17

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ..................................................18

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d  358 (S.D.N.Y. 2002) ...............................................................10

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ...................................................14

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) ...................................................................................8

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................... 10

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) .......................................................... 11

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ............................................................................... 15

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .................................................................................................. 13

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009) .......................................................... 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .................................................................................... 14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................ 13

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) ...................................................................................... 4

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................................... 10, 12

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ...................................................................................... 2

*Steiner v. Am. Broad Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................. 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ...................................................................................... 4

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ..................................................... 20

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ...................................................................................... 3

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................*passim*

STATUTES

15 U.S.C. § 78u-4(a)(4) ................................................................................................... 1, 20

15 U.S.C. § 78u-4(a)(6) ......................................................................................................... 4

15 U.S.C. § 78u-4(b)(1)-(b)(2)(A)........................................................................................ 1

15 U.S.C. § 78u-4(b)(1)-(b)(3)(B) ....................................................................................... 1

## I.    INTRODUCTION

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), have succeeded in obtaining a $7,250,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class.[1]  This is an extremely favorable outcome in the face of substantial risks and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel now respectfully moves for an award of attorneys' fees in the amount of 30% of the Settlement Fund (*i.e.*, $2,175,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $110,280.79 in Litigation Expenses.  The Litigation Expenses consist of $85,280.79 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and a $25,000 award to Court-appointed lead plaintiff Mejgan Mirbaz pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78u-4(a)(4)) for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action.

Achieving the Settlement was not easy.  Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment.  *See* 15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B).  These are not idle risks.  "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec.*

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated August 14, 2024 (the "Stipulation"; ECF No. 91-1), or the concurrently filed Declaration of Garth Spencer ("Spencer Declaration"). Citations to "¶ __" and "Ex. __" herein refer to paragraphs in and Exhibits to the Spencer Declaration.

*Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).[2]  As a result, a significant number of cases are dismissed in whole or in part at the outset.[3]

Nor do the risks end at the pleading stage.  Even when a plaintiff is successful at trial, payment is far from guaranteed.[4]  This risk was particularly acute in the instant Action due to Mullen Auto's precarious financial position throughout the course of the litigation.  There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.  *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Despite these risks, Lead Counsel has vigorously pursued this case for over two years—working 1,007.25 hours, and advancing $85,280.79 in expenses, all on a fully contingent basis.  As compensation for GPM's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 30% of the Settlement Fund.  Lead Counsel believe that an award of 30% properly reflects the many significant risks taken by Lead Counsel, as well as the result achieved in a hard fought and difficult litigation.  When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.

---

[2] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[3] *See* Ex. 2 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ("NERA Report") at p. 17 (Fig. 15) (61% of decisions on motions to dismiss in securities class actions granted, and additional 20% partially granted).

[4] *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

Lead Counsel also seek reimbursement of $85,280.79 in out-of-pocket litigation expenses.  The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action.  Accordingly, they should be approved. Finally, Lead Counsel respectfully requests a PSLRA award in the amount of $25,000 to compensate Lead Plaintiff for the time and effort she expended on behalf of the Settlement Class.  Absent Lead Plaintiff's "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible."  *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

## II.  FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Spencer Declaration for a discussion of, *inter alia*, the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

## III.  THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.  Lead Counsel Is Entitled To A Common Fund Fee Award

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.

2002).  Where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method.  *See Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

As such, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-check to assess the reasonableness of the percentage award.  *See Vizcaino*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure…."); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

**B.    The Requested Attorneys' Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit**

In making an award under the common fund doctrine, "[t]he guiding principle is that attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).  "Factors that courts have used to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *12 (C.D. Cal. April 23, 2024).

"The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances." *Id.* at *12. Each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee. Lead Counsel respectfully submits that these factors support an upward adjustment of the Ninth Circuit's 25% benchmark fee award to 30%, particularly in light of the strong result achieved, the significant risks to the Action, and Lead Counsel's skill in successfully achieving the Settlement.

### 1.    The Quality Of The Result Supports The Fee Request

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award." *In re Heritage Bond Litig.,* 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class.").

Here, Lead Counsel has achieved a significant and certain cash payment of $7,250,000, plus interest, for the Settlement Class without the substantial risk, delay, expense, and uncertainty of continued litigation, trial and the inevitable appeals. Lead Counsel, in consultation with a damages expert, estimates that *if* the Court certified the same class period as the Settlement Class Period, *if* the class had prevailed on its claims at both summary judgment and after a jury trial, *and if* the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation as to each of the corrective disclosure dates reflected in the Plan of Allocation (*i.e.*, what Lead Counsel believe is the best-case scenario based on the arguments they anticipated making if the case continued to be litigated), estimated total class wide damages would be approximately $84.3 million. ¶¶8, 64.[5] Under this scenario, the recovery is

---

[5] This estimate depends on a number of assumptions. ¶¶62-63. While Lead Counsel believes the $84.3 million damages estimate is based on the most reasonable assumptions, different assumptions regarding when certain shares of Mullen Auto

approximately 8.6% of class-wide damages. This is *more than twice* the typical recovery for cases of a similar magnitude. *See* Ex. 2 (NERA Report), at p. 26 (Fig. 23) (between January 2015-December 2024 the median of settlement value as a percentage of "NERA-Defined Investor Losses" was 3.8% for securities class actions with estimated losses between $50-$99 million).

This case was not, however, risk free and there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation" and "[t]he risk of establish damages [is] equally daunting."). In addition to continuing to challenge the elements of falsity and scienter, Defendants indicated that they intended to challenge class certification, loss causation and damages. ¶35. Defendants would likely argue that: (a) Mullen Auto stock traded in an inefficient market, so Lead Plaintiff would not be entitled to a fraud-on-the-market presumption of reliance; and (b) there was a lack of impact on the price of Mullen Auto stock. ¶56; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) (plaintiffs may be entitled to a presumption of reliance on material misstatements to the extent that securities they purchased traded in an efficient market that incorporated such information into the price of the security); *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S.

---

stock first entered the public market resulted in estimated damages of $35.2 million to $108.8 million—in which case the recovery would equate to 20.6% to 6.7% of damages. *Id*. Under either of these scenarios, the Settlement Amount exceeds the median percentage recoveries in similar settlements. *See* Ex. 2 (NERA Report) at p. 26 (Fig. 23) (median of settlement value was 5.2% for securities class actions with estimated losses between $20-$49 million, and 3.0% for estimated losses between $100-$199 million).

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES

113, 123 (2021) (directing courts to consider "all evidence relevant to price impact" at the class certification stage).[6]

Defendants would have likely asserted, *inter alia*, that there was extensive volatility in Mullen Auto's stock price, the stock moved in tandem with other EV companies, and the stock price reaction was not always statistically significant. ¶56. While Lead Plaintiff believes she had the better arguments on these issues, prevailing on class certification and proving class-wide damages was far from certain. ¶57; *see also Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc*., 77 F.4th 74, 81 (2d Cir. 2023) (de-certifying the class and effectively ending the case—after approximately 13 years of litigation—based on 2021 Supreme Court decision allowing courts to consider certain price impact arguments at the class certification stage); *In re Safety-Kleen Corp. Bondholders Litig.*, 2004 WL 3115870, at *8 (D.S.C. Nov. 1, 2004) (de-certifying Exchange Act claims of bondholders class because the court found the market for the bonds was not efficient).

Moreover, Lead Counsel believes that Defendants would have continued to dispute loss causation, and to assert that even if Lead Plaintiff could establish that element, damages would be minimal. ¶51; *see also Dura Pharms*., *Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation ... proximately caused the plaintiff's economic loss."). Although Lead Plaintiff believed that she had meritorious arguments in response, had Defendants' arguments been accepted in whole or part they could have dramatically limited or foreclosed any potential recovery. ¶52; *see also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

---

[6] Questions about price impact are not ordinarily considered in the context of settlement. *In re American Intern. Group, Inc. Sec. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012).

Lead Counsel also believes that Defendants would have sought summary judgment as to their allegedly misleading statements made before Mullen Tech's reverse merger with Net Element (*i.e.*, the majority of the statements at issue), based on the recent precedent of *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024). ¶48. In *Lucid*, the Ninth Circuit followed the reasoning in *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) to find that investors lacked statutory standing for their Section 10(b) claims relating to pre-merger statements about a private company. Although this Court rejected similar arguments raised in Defendants' motion to dismiss (*see* ECF No. 68 at 5-8), and Lead Counsel continues to believe the Court's analysis was correct, *Lucid* presented a formidable obstacle that threatened to substantially reduce the scope of this Action.

Given the range of possible results, including no recovery at all, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee. *See Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *11 (S.D. Cal. Dec. 19, 2024) (where recovery "exceeds recent median recovery percentages both nationwide and in similar securities class action settlements approved by courts in this Circuit … the results achieved by Counsel weigh in favor of an upward adjustment from the 25% benchmark."); *see also Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% of $12,750,000 gross settlement fund in securities fraud class action where recovery was 3.49% of maximum damages).

**2.    The Substantial Litigation Risks Support The Fee Request**

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048.[7] While courts have always

---

[7] "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000); *see also In re NASDAQ Market-Makers Antitrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y.*

recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the [PSLRA].").[8]

This case presented very real ability-to-pay issues—a risk that was evident at the beginning of the case and that had manifested by the end. ECF Nos. 100-118 (filings regarding Defendants' failure to timely fund Settlement, and Lead Plaintiff's ultimately successful efforts to compel funding); ¶¶36-45. During the Settlement Class Period, Mullen was a small startup with no ability to mass produce vehicles, no revenue, and its financial statements included a note stating that there is substantial doubt about the Company's ability to continue as a going concern. ¶¶37-38. As such, when the case was filed there was no guarantee that Defendants would have sufficient funds to pay a substantial judgment years in the future. Lead Counsel had no knowledge of whether Defendants had D&O coverage when undertaking this litigation and, because of the PSLRA discovery stay, would not be able to obtain the applicable policies, if any, until after Lead Plaintiff prevailed against a motion to dismiss. ¶43.

There was also a strong chance that any available insurance funds would be reduced by defense costs. Accordingly, there was a very significant risk that the Action might yield a small recovery, or indeed no recovery at all, following many years of hard-fought litigation. *See* ¶¶36-45; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding "[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant

---

1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise).").

[8] *See also* NERA Report at p. 17 (Fig. 15) (discussing dismissal statistics).

unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over").

Another factor in assessing risk is "whether Class Counsel had the benefit of a prior judgment or decree in a case brought by the government." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). This is because the risk of nonpayment is higher in cases where there has been no government action. *See In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008). In the instant case, no civil or criminal charges have been filed by the SEC or DOJ. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (awarding one-third of settlement fund and noting that "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action related to Del Global.").[9]

Another indicium of risk is the fact that this was not a restatement case. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was that the case did not involve a restatement of financials). When companies restate their financials, they admit to a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because these elements of a securities fraud claim are already met. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of

---

[9] While Lead Plaintiff's case was aided by the report regarding Mullen Auto published by Hindenburg Research, the conclusions of that report were unproven and contested by Defendants. *See* ECF No. 52 at 22. Lead Counsel's investigation and discovery efforts went far beyond mere reliance on the Hindenburg report. *See* ¶¶16, 21-26.

TXU's previously issued financial statements or any other acknowledgments of wrongdoing.").

In sum, the risks posed by litigation were substantial, and they were present every step of the way. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.      The Skill Required And The Quality Of The Work

The third factor considered for fee awards is the skill required and the quality of the work performed.  Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities" (*Omnivision*, 559 F. Supp. 2d at 1047), and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at \*12.  "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by its firm résumé, GPM's attorneys have many years of experience litigating securities class actions. *See* Ex. 6.  Lead Counsel's experience allowed them to obtain significant investigative materials despite the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, prevail in large part against Defendants' motion to dismiss, and to formulate strategies to effectively and efficiently prosecute the Action.  Lead Counsel used their substantial experience to, *inter alia*: (i) successfully oppose Defendants' arguments regarding the still-developing issue of statutory standing for Exchange Act Section 10(b) claims; (ii) aggressively pursue targeted discovery from Defendants and non-parties; (iii) negotiate the Settlement at a time and under terms favorable to the Settlement Class; and (iv) compel Defendants' overdue funding of the full Settlement Amount. ¶105.  Lead Counsel's skill and experience were major factors in obtaining the excellent result achieved by this Settlement.  *See Mild v. PPG Indus., Inc.*, 2019

WL 3345714, at *3 (C.D. Cal. July 25, 2019) (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See Heritage Bond*, 2005 WL 1594403, at *20. Defendants were represented in this Action by experienced, highly skilled counsel from King & Spalding LLP. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz*, 2005 WL 3148350, at *30.

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the fee. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Destefano v. Zynga*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Here, Lead Counsel has received no compensation to date, invested 1,007.25 hours of work equating to a total lodestar of $978,017.50, and advanced expenses of $85,280.79. ¶¶93, 112. Additional work in implementing the Settlement, including filing final approval and distribution motions and overseeing claims administration, will also be required. Lead Counsel will not seek additional fees for this work. ¶97. Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See Gross v.*

*GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 F. App'x 27 (2d Cir. Sept. 13, 2019).[10]

Furthermore, there are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996."). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel Energy*, 364 F. Supp. 2d at 994.[11] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).[12]

Here, because Lead Counsel's fee was entirely contingent, the only certainties

---

[10] *See also* ¶58.

[11] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and directing entry or judgment for defendant).

[12] *See also supra* n.4.

were that there would be no fee or expense reimbursement without a successful result, and that such a result would only be realized after expending substantial time, effort, and costs. Nevertheless, Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *NASDAQ Market-Makers*, 187 F.R.D. at 488.

### 5. A 30% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

The Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2.[13] As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third.").

"This is particularly true in securities class actions such as this." *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. Jul. 28, 2014); *see also Pac. Enters.*, 47 F.3d at 373 (affirming 33% award from $12 million common

---

[13] *See also Graulty*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstances.").

fund "because of the complexity of the issues and the risks").  Indeed, the median fee as a percentage of settlement value was 30% for securities class action settlements settled between 2015 and 2024 with a gross settlement value of between $5 million and $10 million.  *See* NERA Report at p. 30 (Fig. 27).[14]

The requested fee is, therefore, well within the range of percentages courts in this Circuit and elsewhere have awarded in similarly complex cases.  *See Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action settlement); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of  30% or more in complex class actions"); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (30% of $8.9 million); *Odonate Therapeutics*, 2022 WL 1997530, at *6 (awarding 33⅓% of $12.75 million settlement fund in securities class action).[15]

Therefore, this factor also weighs in favor of granting Lead Counsel's 30% fee request.

### 6.    The Reaction Of The Settlement Class Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21. While the time to object to the requested fee and expenses does not expire until April 25, 2025, to date, only two objections have been received by Lead Counsel.  ¶79; ECF

[14] For securities class actions settled during 1996-2014, the median of plaintiffs' attorneys' fees as a percentage of gross settlement value ranging from $5 million to $10 million was also 30%.  NERA Report at p. 30 (Fig. 27).  Thus, fee awards for settlements of this size have remained remarkably consistent since the passage of the PSLRA in 1995.

[15] *See also* Ex. 7 (collecting Ninth Circuit cases awarding fees of 33% and above).

Nos. 119, 120. These objections, and any others that may be received, will be addressed in the reply papers. Additionally, to date there have been only four requests for exclusion from the Settlement Class. ¶77. Such small numbers of objections and exclusion requests, especially in comparison to the 118,024 potential Settlement Class Members to whom notice has been disseminated (Ex. 1 at ¶12), support the fee request. *See Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (3 members objected and 29 opted out, indicating favorable result and supporting award of a "generous fee").

### C.    A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Stable Road*, 2024 WL 3643393, at *15. In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors

such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass*, 331 F. App'x at 456.[16] In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,007.25 hours to the prosecution of the Action. ¶¶93-96. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a declaration that includes a schedule breaking down the firm's lodestar by individual, position, billing rate, and hours billed.[17] *Id*. Based on current hourly rates,[18] Lead Counsel's lodestar is $978,017.50. *Id*.[19] Thus, the 30% fee request (equal to $2,175,000 before interest), yields a multiplier of 2.22. *Id*.

---

[16] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check").

[17] *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[18] Courts use current rather than historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[19] Lead Counsel's rates range from $1,000 to $1,225 for partners, and $325 to $400 for paralegals and support staff (¶93), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021

A multiplier of 2.22 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Steiner v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher.").

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, Lead Counsel will file final approval papers, oversee the claims administration process, continue responding to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. ¶97. The multiplier will, therefore, diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## IV.  LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048. The appropriate

rates); *see also* Ex. 5 (table of rates charged by peer plaintiff and defense counsel in complex litigation); *In re Stable Road,* 2024 WL 3643393, at *15 (applying GPM's 2024 rates in context of lodestar cross-check).

analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. ¶111. Lead Counsel understood that, even if the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. *Id.*

In the aggregate, Lead Counsel have incurred out-of-pocket expenses in the amount of $85,280.79 while prosecuting the Action, and these expenses are set forth in the Spencer Declaration. ¶¶112-119. The majority of expenses ($70,998.95, or approximately 83.2%) were for: the retention of a experts ($35,528), the mediator ($12,500), and a private investigation firm ($5,165.99), as well as online research ($11,272.35) and service of process (including for difficult-to-serve subpoena recipients) ($6,532.61). *Id.* Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement (travel costs, e-discovery hosting, *etc.*), are the types of expenses routinely charged to clients who pay hourly. They should, therefore, be reimbursed out of the common fund. *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement for similar types of ordinary and necessary litigation expenses).[20]

---

[20] Lead Counsel's requested reimbursement of $85,280.79 (plus a PSLRA award of $25,000 for Lead Plaintiff) is substantially less than the $136,000 maximum amount of potential expenses set forth in the Notice. Ex. 1-B, ¶¶5, 77.

## V.     THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA AWARD REQUEST

In connection with Lead Counsel's request for payment of Litigation Expenses, Lead Plaintiff respectfully requests a PSLRA award in the amount of $25,000 to reimburse her for time spent prosecuting the Action.  15 U.S.C. § 78u-4(a)(4). "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *In re Stable Road*, 2024 WL 3643393, at \*16.  Reimbursement of such costs are allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at \*5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Ms. Mirbaz took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiff in the Action; (ii) producing her trading records to her attorneys and responding to discovery requests; (iii) regularly communicating with her attorneys regarding the posture and progress of the case; (iv) reviewing significant pleadings and briefs filed in this Action; (v) reviewing Court orders and discussing them with her attorneys; (vi) flying from her home in Sweden to Los Angeles to participate in the mediation in person; and (vii) evaluating and approving the proposed Settlement.  *See* Ex. 8 at ¶¶4-7.  "These are precisely the types of activities that support awarding reimbursement of expenses to class representatives" (*In re Stable Road*, 2024 WL 3643393, at \*16), and the amount requested is consistent with awards in other complex cases.  *See Xcel Energy*, 364 F. Supp. 2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").[21]

---

[21] *See also Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at \*2 (S.D.N.Y. April 30, 2024) ($25,000 award to lead plaintiff and $15,000 award to each of the other four named plaintiffs); *In re Virgin Mobile USA IPO Litig.*, No. 07-

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

DATED:  April 4, 2025                      Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:    */s/ Garth Spencer*

Robert V. Prongay
Casey E. Sadler
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Email: csadler@glancylaw.com
Email: rprongay@glancylaw.com
Email: gspencer@glancylaw.com

*Counsel for Lead Plaintiff Mejgan Mirbaz and the Settlement Class*

---

cv-5619 (SDW), ECF No. 146 at ¶19 (D.N.J. Dec. 8, 2010) (PSLRA awards to co-lead plaintiffs of $29,370, $29,205, $30,000, and $25,245 respectively, for a combined total of $113,820) (Ex. 9).

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Mejgan Mirbaz, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 4, 2025          _s/ Garth Spencer_
                              Garth Spencer

**<u>PROOF OF SERVICE</u>**

I hereby certify that on this 4th day of April, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Garth Spencer*
Garth Spencer
