Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
Garth Spencer (SBN 335424)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com
Email: gspencer@glancylaw.com

*Lead Counsel for Lead Plaintiff Mejgan Mirbaz*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION | Case No. 2:22-cv-03026-DMG-AGR<br><br>Honorable Dolly M. Gee<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Hearing Date: June 20, 2025<br>Hearing Time: 10:00 a.m.<br>Location:    350 West 1st Street<br>Courtroom:   8C |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   HISTORY OF THE LITIGATION ................................................................ 3

III.  STANDARDS GOVERNING FINAL APPROVAL .................................... 4

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE IN LIGHT OF THE RULE 23(E)(2) FACTORS AND THE REMAINING *HANLON* FACTORS ................................................................................. 6

    A.   Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class ............................................................................... 6

    B.   The Settlement Is The Result Of Arm's-Length Negotiations ............... 7

    C.   The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ......................................................................... 8

    D.   Rule 23(e)(2)(C)(ii)-(iv) ............................................................... 12

    E.   The Settlement Treats All Class Members Equitably Relative To Each Other .............................................................................. 13

    F.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval ...................................................................... 13

V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE .............................................................................................. 19

VI.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED .........22

VII. CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...................................................................10

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................9, 13

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......................................16, 17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .....................................................................................8

*Faraday Future Intelligent Elec. Inc.*,
   2024 WL 1245341 (C.D. Cal. Mar. 18, 2024) ..........................................18

*Fleming v. Impax Labs. Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ...........................................22

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) .....................................................................4

*Gudimetla v. Ambow Educ. Holding*,
   2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ...................................14, 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................5, 6, 7, 8

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................14

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...........................................5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .......................................................................10

*In re Critical Path, Inc.*,
   2002 WL 32627559 (N.D. Cal. June 18, 2002) .........................................11

*In re Diamond Foods, Inc., Sec. Litig.*,
2014 WL 106826 (N.D. Cal. Jan. 10, 2014)...........................................................11

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ....................................................................11

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .......................................................15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................................19

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).......................................................10, 18, 19

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .....................................................................................12

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................17

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)...................................................passim

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ...................................................................................4

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................8

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...................................................14, 16

*In re: CCIV / Lucid Motors Sec. Litig.*,
110 F.4th 1181 (9th Cir. 2024).................................................................................9

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .........................................................13

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017)........................................................................8

*Lea v. TAL Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..................................................11, 13

*Lusk v. Five Guys Enters. LLC*,
  2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) ..................................................7

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  49 F.4th 790 (2d Cir. 2022) ..................................................9

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ..................................................6, 7

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)..................................................17

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..................................................10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................4, 7

*Schueneman v. Arena Pharm., Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020) ..................................................22

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..................................................14

*Smith v. Dominion Bridge Corp.*,
  2007 WL 1101272 (E.D. Pa. Apr. 11, 2007)..................................................9

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)..................................................16

*Sudunagunta v. NantKwest, Inc.*,
  2019 WL 2183451 (C.D. Cal. May 13, 2019)..................................................7

*U.S. v. State of Or.*,
  913 F.2d 576 (9th Cir. 1990) ..................................................18

*Vikram v. First Student Mgmt., LLC*,
  2019 WL 1084169 (N.D. Cal. March 7, 2019) ..................................................14

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Mar. 25, 2021) ...............................................5, 7, 8

RULES

FED. R. CIV. P. 23 ......................................................................................*Passim*

OTHER AUTHORITIES

Advisory Committee Notes to 2018 Amendments,
    324 F.R.D. 904 ......................................................................................5

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed lead plaintiff Mejgan Mirbaz ("Lead Plaintiff"), on behalf of herself and the Settlement Class, respectfully submits this memorandum in support of her motion for: (1) final approval of the proposed Settlement resolving the above-captioned action (the "Action"); and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1]

## I.    PRELIMINARY STATEMENT

The Parties in the Action have reached a proposed Settlement that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $7,250,000.[2]  Lead Plaintiff respectfully submits that this Settlement: (1) was secured through a process that evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness; and (2) represents an excellent result for the Settlement Class, especially given the risks, costs, and delays of continued litigation. Under such circumstances, final approval is appropriate.

The Settlement was reached through a procedurally fair process.  By the time the Settlement was reached, Lead Plaintiff and her counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to locate and interview former Mullen employees and other sources of relevant

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated August 14, 2024 (the "Stipulation"; ECF No. 91-1), or Declaration of Garth Spencer ("Spencer Declaration"), filed on April 4, 2025 (ECF No. 123).  Citations to "¶ __" and "Ex. __" herein refer to paragraphs in and Exhibits to the Spencer Declaration.

[2] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶2.9.

information, and consultation with an expert in the fields of loss causation and damages;

- drafted the 71-page Amended Complaint (plus exhibits) based on the research and investigation;

- researched and opposed Defendants' motion to dismiss and request for judicial notice, after which the Court partially denied the motion;

- engaged in significant discovery efforts, which included, *inter alia*: (i) propounding and responding to comprehensive requests for production and interrogatories; (ii) serving subpoenas *duces tecum* on 11 non-parties; (iii) negotiating parameters for Defendants to search their electronically stored information; negotiating a confidentiality order and discovery protocol; (iv) reviewing approximately 5,069 documents, consisting of 25,548 pages, produced by Defendants and non-parties; and (v) taking the deposition of a non-party;

- participated in an adversarial mediation process, which involved: (i) preparing a detailed mediation statement addressing liability, loss causation, damages, and class certification, along with exhibits; (ii) reviewing and analyzing Defendants' mediation statements; and (iii) participating in a full-day mediation session with an experienced and highly respected mediator of complex cases— Robert A. Meyer, Esq. of JAMS—which resulted in the acceptance of a mediator's recommendation to settle;

- drafted and then negotiated the Term Sheet, Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation; and

- engaged in significant briefing and negotiations related to Lead Plaintiff's Motion to Enforce Settlement Agreement.  ¶¶10, 16-34.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

The $7,250,000 Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

The financial position of Mullen and the limited D&O insurance available also weigh in favor of settlement approval. At all relevant times—from the Settlement Class Period through today—the SEC filings of Mullen Auto have contained going concern warnings. ¶¶37-38. Mullen Auto has also repeatedly disclosed the receipt of delisting notices from NASDAQ and its stock has traded for under $1.00 per share. ¶39; Ex. 4. In Mullen Auto's Form 10-Q filed with the SEC on February 19, 2025, the Company revealed only $2.3 million in unrestricted cash on hand, liabilities far exceeding assets, and an operating loss of over $50 million for the quarter ended December 31, 2024. ¶¶38; Ex. 3. Moreover, Lead Plaintiff was required to move the Court to compel Defendants and/or their D&O Insurers to comply with the terms of the Stipulation and fully fund the Settlement. *See* ECF Nos. 102-118. If this litigation were to continue, it is highly doubtful Lead Plaintiff and the Settlement Class would recover more than the Settlement Amount. The Settlement is, therefore, substantively fair, reasonable and adequate.

As discussed in greater detail below, Lead Plaintiff and her counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Consequently, Lead Plaintiff respectfully requests that the Court grant the Settlement final approval.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's consulting damages expert and distributes the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. Accordingly, it too should be approved.

## II.   HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Spencer

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Declaration for a more fulsome discussion of, *inter alia*: the Action's history; the nature of the claims asserted; the work performed by Lead Plaintiff and Lead Counsel in prosecuting the Action; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation.

## III.    STANDARDS GOVERNING FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[3]  Moreover, courts should defer to "the private consensual decision of the parties" to settle (*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)) and advance the "overriding public interest in settling and quieting litigation." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:
(i)    the costs, risks, and delay of trial and appeal;
(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
(iv)    any agreement required to be identified under Rule 23(e)(3); and

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

(D)    does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . .  described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). FED. R. CIV. P. 23(e) Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, at 919.

These factors are not exclusive, nor intended to displace any factor previously adopted by the courts. *See Id*. The Ninth Circuit's traditional factors used to evaluate class action settlements (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[4]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1531171, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors").

As explained below and in the Spencer Declaration, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Hanlon* factors, demonstrates that the Settlement merits final approval.

---

[4] "Because no government entities are participants in this case, this factor is neutral." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE IN LIGHT OF THE RULE 23(E)(2) FACTORS AND THE REMAINING *HANLON* FACTORS

### A.    Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and she has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with those of the other Settlement Class Members. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019).  Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for herself and the Settlement Class, including by responding to discovery requests and even attending the mediation in-person.  Ex. 8 (Lead Plaintiff Declaration), ¶6.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions in federal and state courts throughout the country.  *See* Ex. 6 (GPM firm résumé).  And, here, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, *inter alia*: conducting an extensive investigation of the claims through a detailed review of publicly available documents about Mullen, as well as

contacting former Mullen employees; drafting the detailed Amended Complaint; fully briefing and defeating in part the motion to dismiss; conducting discovery of Defendants and non-parties; and obtaining a $7.25 million Settlement for the benefit of the Settlement Class through an adversarial mediation process. *See* ¶¶10, 16-34; *see also PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims").

**B.     The Settlement Is The Result Of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length."[5]  The Ninth Circuit, and courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965.

Here, the Parties participated in a full-day mediation session with Mr. Meyer, which culminated in a mediator's proposal that the Action be settled for $7.25 million. ¶27.  The arm's-length nature of the settlement negotiations and the involvement of a mediator with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq." and the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive[.]"); *see also Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

---

[5] Rule 23(e)(2)(A)-(B) overlaps with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1531171, at *6 (citing *Hanlon*, 150 F.3d at 1026).

**C.**     **The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

The Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[6]  As discussed below, these factors support the Settlement's approval.

**The Strength of Lead Plaintiff's Case and Risk of Continued Litigation:** In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Here, the risks of continued litigation were considerable.  While Lead Plaintiff partially survived Defendants' motion to dismiss, she still needed to ***prove*** her case. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order [partially] dismissing the shareholder [] litigation to assess the risks involved.").  Lead Plaintiff would have to prove that, *inter alia*: the remaining challenged statements were materially false and misleading; Defendants knew or were reckless in not knowing that their statements were misleading when made; and those statements were corrected and caused recoverable damages for the Settlement Class.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Counsel anticipated Defendants would present strong arguments challenging all of those elements at

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risks of maintaining class action status throughout the trial. *Arlo*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026).

summary judgment and/or at trial. ¶¶35, 46-54.

Defendants would, no doubt, continue to argue that Lead Plaintiff lacked statutory standing as to the allegedly misleading statements made before Mullen Tech's reverse merger with Net Element (*i.e.*, the majority of the statements at issue), relying on *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 49 F.4th 790 (2d Cir. 2022), *amended and superseded by* 54 F.4th 82 (2d Cir. 2022). *See* ECF No. 52 at 11-13. While the Court rejected those arguments (*see* ECF No. 68 at 5-8), at the time the Parties were negotiating the Settlement the Ninth Circuit followed the reasoning of *Menora Mivtachim* in its decision in *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024). Although Lead Counsel continues to believe that this Court's analysis of the statutory standing issue was correct, Defendants were highly likely to raise this issue again at summary judgment or class certification, which would have presented a formidable obstacle that threatened to substantially reduce the scope of this Action.

Moreover, Lead Counsel anticipated Defendants would continue to argue that Lead Plaintiff failed to allege actionable misrepresentations under the federal securities laws, and that the remaining misstatements were made without scienter. ¶47. Scienter is often one of the most difficult elements to prove in a securities fraud case, requiring plaintiffs to rely on circumstantial evidence concerning the state of mind of an adverse witness. *See Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *5 (E.D. Pa. Apr. 11, 2007) ("Since stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs."); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do.").

Defendants would also likely argue that loss causation and damages could not be proven because Mullen's stock was volatile and its price movement following all but one of the alleged corrective disclosures was not statistically significant. ¶51.

While Lead Counsel believe they had strong arguments to the contrary, proving loss causation and damages would have been complex, risky, and would have required expensive expert testimony. ¶¶50-54; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts, with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Lead Counsel expects that Defendants would likely appeal the verdict and award. ¶59. The appeals process can take years to resolve, including direct appeal to the Ninth Circuit, potential reconsideration or *en banc* review, or even a writ of certiorari to the Supreme Court. During any potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[7]

**Risks of Maintaining Class Action Status:** While Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 90, Preliminary Approval Motion, § IV.B), the class has not yet been certified, and there is a risk the Court could disagree. Even if the Court were to certify the class, there remains a risk that the class could be decertified later in the proceedings. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Lead Counsel expected Defendants to argue, *inter alia*, that Lead Plaintiff could not demonstrate price impact based on a purported lack of statistically significant price

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

movements in response to certain information, and that Mullen stock traded in an inefficient market, which would foreclose the fraud-on-the-market presumption of reliance.  ¶56.  While Lead Plaintiff would vigorously dispute any such arguments, "[t]he risks attendant to certifying a class and defending any decertification motion supports approval of the settlement."  *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019).

**Risks Concerning Collectability:** Even if Lead Plaintiff were to establish and maintain class certification, liability, and damages, through trial and appeals, there would still be substantial risk that she would not be able to collect on a judgment.  ¶¶36-45.  The potentially available insurance policies were limited, wasting, and may have denied coverage if Defendants were found by a final judgment to have committed fraud.  ¶43.  Mullen's most recent publicly filed quarterly report lists only $2.3 million of unrestricted cash for the quarter ended December 31, 2024, liabilities far exceeding assets, and a quarterly operating loss of over $50 million.  ¶38; Ex. 3.  The report also states that "[t]here is substantial doubt about the Company's ability to continue as a going concern … ."  *Id*.  Although Mullen has announced receiving commitments for additional investments, there remains substantial uncertainty as to whether, years from now, Lead Plaintiff could collect ***any*** funds from Defendants, let alone an amount potentially greater than the $7.25 million Settlement.  ¶¶36-45; *see also In re Diamond Foods, Inc., Sec. Litig.*, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) ("It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about Diamond's strained financial state and its ability to pay a judgment following further litigation.") (cleaned up); *In re Critical Path, Inc.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing . . . watching Critical Path fall into bankruptcy; and, most certainly, drying up the available insurance.").

**D.      Rule 23(e)(2)(C)(ii)-(iv)**

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. Each of the Rule 23(e)(2)(C) factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** "The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024). Here, A.B. Data, Ltd., the Court-appointed Claims Administrator, will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. "Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund." *Id.* (approving nearly identical distribution process and granting final approval).

**Rule 23(e)(2)(C)(iii):** The Postcard Notice and Notice stated that Lead Counsel would apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. Lead Counsel is, however, only seeking an attorneys' fee of 30% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount). A proposed attorneys' fee of 30% of the Settlement Fund is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar cases. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *see also* ECF No. 122, Fee Memorandum, § III.B.5. (percentage of the fund analysis). More importantly, approval of the Fee and Expense Application is separate from

approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to the Fee and Expense Application. *See* Stipulation ¶6.2.

**Rule 23(e)(2)(C)(iv):** The Parties have executed a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Mullen Auto Common Stock outstanding at the end of the Settlement Class Period request exclusion (or "opt out") from the Settlement. ¶29. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *1; *see also Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

### E. The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant—including Lead Plaintiff—will receive his, her, or its *pro rata* share of the Net Settlement Fund. *See* ECF No. 123-1, Ex. B (the "Notice") at ¶¶47-76. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* at ¶71. Courts have repeatedly approved similar plans. *Stable Road*, 2024 WL 3643393, at *8 (substantially similar plan of allocation treats class members equitably); *TAL Educ. Grp.*, 2021 WL 5578665, at *11 ("[t]his methodology is appropriate and consistent with many other securities class action settlements' plans of allocation.").

### F. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors. These factors also support final approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *12 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Courts must also consider the "serious risk[] that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a judgment." *Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015).

The $7.25 million recovery represents 8.6% of Lead Counsel's estimate of $84.3 million in damages for the corrective disclosures reflected in the proposed Plan of Allocation. ¶¶8, 62, 64.[8] This estimate depends on a number of assumptions, including when and in what quantities certain shares of stock registered for public trading by Mullen toward the end of the Settlement Class Period first entered the public market. ¶62. While Lead Counsel believes the $84.3 million damages estimate

---

[8] While, in addition to the corrective disclosure dates reflected in the Plan of Allocation (September 21, 2021; April 7, 2022; and April 18, 2022), the Amended Complaint alleged corrective disclosures on April 6, 2022 and April 19-20, 2022, Lead Counsel believes that proving loss causation and damages would be more difficult for those dates, and so they are not reflected in the Plan of Allocation and damages figures herein. ¶63; *see also In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("Courts in this District and elsewhere endorse distribution of settlement proceeds according to the relative strengths and weaknesses of the various claims.").

to be based on the most reasonable assumptions, using different assumptions as to when the newly registered Mullen shares entered the market, and holding all else equal, resulted in a range of estimated damages calculated by Lead Counsel's expert from $35.2 million to $108.8 million (under which the $7.25 million Settlement would range from 20.6% to 6.7% of damages). *Id*.

Obtaining a judgment equal to the $84.3 million damages estimate would require, among other things, that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; (iii) the trier of fact accepted Lead Plaintiff's loss causation and damages theory, including with respect to each of the corrective disclosure dates reflected in the Plan of Allocation; and (iv) Defendants had the assets, and/or their insurance carriers had unexhausted coverage, sufficient to pay the verdict. ¶64. This outcome was far from certain. *Id*.

Notably, the $7.25 million recovery, equal to 8.6% of estimated damages, is **more than double** the typical percentage recovery for damages in a similar sized securities class action. *See, e.g.*, Ex. 2, at p. 26 (Fig. 23) (between January 2015-December 2024 the median settlement value as a percentage of "NERA-Defined Investor Losses" was 3.8% for securities class actions with estimated losses between $50-$99 million). And, of course, less than a complete victory on any aspect of Lead Counsel's theories would decrease recoverable damages and, as discussed above, Lead Counsel fully expected that Defendants would have strongly contested liability and loss causation.

"Considering the risks inherent in this litigation and Defendant[s'] financial situation, this factor weighs in favor of Final Approval." *Stable Road.*, 2024 WL 3643393, at *8 (cleaned up); *see also Gudimetla*, 2015 WL 12752443, at *5 (approving securities fraud class action settlement where $1.5 million recovery was 5.6% of $26.7 million in estimated damages and there were very serious ability to pay and collectability issues); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4

15
MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

(C.D. Cal. Oct. 19, 2009) (approving securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery).

**The Stage of the Proceedings and Extent of Discovery Completed:** Lead Plaintiff had completed significant discovery, including review and analysis of over 5,000 documents (totaling over 25,000 pages) produced in response to her requests for production to Defendants and subpoenas to non-parties, and taking the deposition of a non-party. ¶¶10, 22-25. Lead Plaintiff was prepared to continue vigorously pressing discovery if a favorable Settlement could not be reached. *Id*. In addition, Lead Plaintiff conducted an extensive investigation, which included consulting with a loss causation and damages expert, contacting former Mullen employees and analyzing numerous publicly available documents. Moreover, Lead Plaintiff engaged in substantial briefing on Defendants' motion to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator. ¶¶10, 18, 27-29. Thus, at the time of settlement, Lead Plaintiff and her Counsel had a thorough understanding of the strengths and weaknesses of this Action. ¶¶10-11, 65; *see also In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.").

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). This is because "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *13 (N.D. Cal. Feb. 11, 2016) (cleaned up).

As discussed above, Lead Counsel has a thorough understanding of the merits and risks of the claims, as well as extensive prior experience litigating securities class

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

action cases. "Under such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class [] supports the Settlement's approval." *See Stable Road*, 2024 WL 3643393, at *9.

It is also important to note that Lead Plaintiff, who was thoroughly involved in all aspects of the litigation, supports the Settlement. *See* Ex. 8 (Lead Plaintiff Declaration), ¶¶3-9. Lead Plaintiff's support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress' intent to foster involvement of Lead Plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process, supports settlement because lead plaintiff was intimately involved in the settlement negotiations.").

Finally, Defendants have been vigorously represented by experienced litigators from King & Spalding LLP throughout the Action and settlement negotiations. ¶106. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, this factor supports final approval. *Destefano*, 2016 WL 537946, at *13 (finding "Lead Counsel's endorsement weighs in favor of approving the Settlement" where "Lead Counsel and counsel for Defendants have substantial experience in securities class actions and other complex class action litigation.").

**Class Member Reaction:** The deadline for claims, objections, and exclusion requests was submitted or postmarked by April 25, 2025. Late claims, objections and exclusion requests may continue to be received, and there has not been sufficient time for the Claims Administrator to process and evaluate all claims submitted to date. As such, Lead Plaintiff will more fully discuss this factor, and the exclusions and objections, in her reply brief due June 6, 2025.

The Claims Administrator has disseminated notice to 118,024 potential

Settlement Class Members.  *See* First Supplemental Declaration of Adam D. Walter ("First Suppl. Walter Decl."), filed herewith, at ¶4.  Important Settlement-related filings including the Stipulation, the Preliminary Approval Motion (ECF No. 90), and the Fee and Expense Application (ECF Nos. 121-23) were placed on the Settlement Website.  *See* First Suppl. Walter Decl., at ¶¶6-7.  To date, approximately 26,200 claims have been received.  *Id.* at ¶11.  Only four exclusion requests and two objections have been received.  *See id.* at ¶¶14-15; ECF Nos. 119-20.

Neither of the objections meets the "heavy burden" to show that the Settlement, which "was the product of good faith, arms-length negotiations," is somehow "unreasonable." *U.S. v. State of Or.*, 913 F.2d 576, 581 (9th Cir. 1990). The objection of Eric Garnet (ECF No. 119-1) requests that he be fully compensated for his losses, but does not argue that the Plan of Allocation is unfair.  Indeed, it would be unfair to all other Settlement Class Members to give Garnet preferential treatment in the Plan of Allocation, and it is highly unlikely that continued litigation would have produced a greater, let alone *full*, recovery for all Settlement Class Members.  The objection of Bryan McCauley appears to be based on his assertion that "[t]he Settlement amount is unjust and should be significantly higher."  ECF No. 120-1.[9]  As shown above, the Settlement Amount is not only reasonable, but an excellent result given the significant litigation risks and Defendants' financial position.

That only two objections and only four requests for exclusion have been received demonstrates the Settlement Class's positive reaction to the Settlement and supports final approval.  *See Faraday Future Intelligent Elec. Inc.*, 2024 WL 1245341, at *7-10 (C.D. Cal. Mar. 18, 2024) (approving settlement where there was one objection and four exclusion requests, noting "[t]he absence of objections to the Settlement by almost all class members strongly supports approval.); *Omnivision*, 559

---

[9] In addition, McCauley has not documented his status as a Settlement Class Member as required to submit an objection, despite being asked to do so.  *See* ECF No. 120-2.

F. Supp. 2d at 1043 (approving settlement where there were three objections out of approximately 57,000 class members).

*** 

For all the forgoing reasons, the Court should finally approve the Settlement.

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Lead Plaintiff also requests final approval of the Plan of Allocation. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "To meet this standard, a plan of allocation recommended by experienced and competent class counsel need only have a reasonable and rational basis." *Stable Road*, 2024 WL 3643393, at *10; *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation, developed by one of Lead Plaintiff's damages consultants working in conjunction with Lead Counsel, is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.[10] More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the prices of Mullen/Net Element common stock ("Mullen Common Stock") and call options ("Mullen Call Options") were artificially inflated, and the price of Mullen/Net Element put options ("Mullen Put Options") was artificially deflated, during the Settlement Class Period due to Defendants' alleged materially false and misleading

---

[10] The Plan of Allocation is set forth in the Notice that is posted on, and downloadable from, the Settlement Website. ECF No. 123-1, Ex. B (Notice), at ¶¶47-76.

statements and omissions.  Lead Plaintiff alleges that corrective disclosures removed the artificial inflation/deflation in the prices of Mullen Securities on the following dates: September 21, 2021; April 7, 2022; and April 18, 2022 (the "Corrective Disclosure Dates").[11]  ¶84.

In order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation with respect to Mullen Common Stock and Call Options, the securities must have been purchased or acquired during the Settlement Class Period and held at the opening of trading on at least one of the Corrective Disclosure Dates; and, with respect to Mullen Put Options, those options must have been sold (written) during the Settlement Class Period and still outstanding at the opening of trading on at least one of the Corrective Disclosure Dates.  ECF No. 123-1, Ex. B (Notice), at ¶50.

Under the Plan of Allocation, a Recognized Loss will be calculated for: (i) each share of Mullen Common Stock purchased or otherwise acquired during the Settlement Class Period (including shares acquired through the exercise of a publicly traded option); (ii) each Mullen Call Option purchased or otherwise acquired during the Settlement Class Period; and (iii) each Mullen Put Option sold (written) during the Settlement Class Period.  ¶48.  The calculation of Recognized Loss will depend upon several factors, including when the securities were purchased or otherwise acquired during the Settlement Class Period, and in what amounts, whether those securities were sold, and if sold, when they were sold, and for what amounts, and, for

---

[11] The Mullen Call Options and Put Options are derivative securities whose prices depended, in large part, on the price of Mullen Common Stock.  Thus, the removal of the alleged artificial inflation in the price of Mullen Common Stock upon the Corrective Disclosure Dates would have likewise caused the removal of the alleged artificial inflation on the prices of the Call Options, and the alleged artificial deflation in the prices of the Put Options.

Mullen Call and Put Options, whether and when such options were exercised.[12]  *Id.* The Recognized Loss is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor to estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement.  *Id.*  The Recognized Loss is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.  *Id.*

In general, the Recognized Loss for Mullen Common Stock acquired during the Settlement Class Period will be the difference between the estimated artificial inflation on the date of acquisition and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sale price, whichever is less.  The Recognized Loss calculation also incorporates the "90-day look back" provision of the PSLRA.  ¶55.  The Recognized Loss for Mullen Call Options acquired during the Settlement Class Period and Mullen Put Options sold during the Settlement Class Period, and that were held over a Corrective Disclosure Date, is based on the actual losses an Authorized Claimant incurred.  ¶¶56, 57.

The sum of a Claimant's Recognized Loss is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims, subject to a $10 *de minimis* provision.  ¶¶59, 73.  More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶71.  If a Claimant has an overall market *gain* with respect to

---

[12] Mullen Call and Put Option trading accounted for less than 1% of total dollar trading volume for Mullen Securities during the Settlement Class Period.  ECF No. 91, ¶41.  Consequently, claims for Mullen Call and Put Option transactions are allotted 1.0% of the Settlement pursuant to the Plan of Allocation.  *See* ECF No. 123-1, Ex. B at ¶58, n.9.

his, her, or its transactions in Mullen Securities during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation.  ¶¶69-70.

For these reasons, Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund.  *See Stable Road*, 2024 WL 3643393, at *10-11 (approving substantially similar plan of allocation); *Schueneman v. Arena Pharm., Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020) (same).

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Lead Plaintiff as class representative and GPM as class counsel.  *See* ECF No. 99 at ¶¶1-3.  Nothing has changed since preliminary approval that would undermine the Court's conclusion, and class certification for settlement purposes remains appropriate.  *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022); *Stable Road*, 2024 WL 3643393, at *11.

## VII.  CONCLUSION

For the reasons stated in this memorandum and in the Spencer Declaration, Lead Plaintiff respectfully requests that the Court grant the motion.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Dated: May 9, 2025

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Garth Spencer*
Robert V. Prongay
Casey E. Sadler
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com
Email: gspencer@glancylaw.com

*Counsel for Lead Plaintiff Mejgan Mirbaz and the Settlement Class*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiff Mejgan Mirbaz, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.


DATED: May 9, 2025                 *s/ Garth Spencer*
                                    Garth Spencer

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

**PROOF OF SERVICE**

I hereby certify that on this 9th day of May, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Garth Spencer*
Garth Spencer